SHARP, administrator, *et al. vs.* FINDLEY *et al.*

1. When, for any reason, existing or to exist it becomes impossible to carry out, in whole or in part, any last will and testament, a judge of the superior court has power to render at chambers any decree which may be necessary. A decree for the sale of real estate to which minors were entitled, could be rendered at chambers on the petition of the executor of the will, the legatees being parties, and the minor legatees represented by the executor as their guardian *ad litem*, there being no issue of fact, and all parties assenting thereto.

(a.) Under §4214 of the Code, the judges are to determine on the impossibility of carrying out the will, and the reason for action.

(b.) That, owing to the disastrous effects of the then recent war and the total change in productiveness of landed property, a support could not be realized if the will were carried out, would seem to be a valid reason for action.

(c.) The record showed a consent of parties in writing, and it was unnecessary for the court to submit to the jury the necessity for the sale.

(d.) That the executor was appointed guardian *ad litem* for the minors did not render the proceeding void.

(e.) Upon the presentation to the chancellor of the petition showing that the land of infants was involved, they became wards of chancery.

2. Where the decree for such sale provided that the money acquired therefrom should be delivered to the regular guardian of the infants, and it was so paid, after much litigation on bills in equity between the guardian and executor, and a *prochein ami* of the infants and

the executor, in which this decree was set up and relied upon by the representatives of the minors, such minors would be estopped from denying the validity of the decree.

3. Equity is loth to interfere with and dispossess innocent purchasers who paid full value for the property.

4. The fact that the judge of the superior court considered the petition to sell in term, and called in a jury to pass on the necessity of the sale, would not render the decree less effectual than if passed at chambers.

5. A new trial being granted, the decree falls, and it is unnecessary to pass upon the exceptions thereto or the motion to dismiss the writ of error founded on a separate bill of exceptions as to the decree.

(a.) It being unnecessary, at least, to file a separate bill of exceptions to the decree, the plaintiff in error must pay the costs connected therewith.

6. Where the names of some of the plaintiffs in error were omitted from the bill of exceptions, but their names could be supplied from the record, they could be inserted in the bill of exceptions by amendment, and service on them was unnecessary.

7. Where a case was sent to this court under the act of 1877, after the return day thereof, the burden is on the defendant in error to show that the clerk was delayed by counsel for plaintiff in error, or by the plaintiff's own conduct, in order to dismiss the writ of error on that ground.

8. Where a motion for new trial goes over to another regular term of court, and no action is had upon it, it will stand continued as any other case, and the writ of error will not be dismissed for that reason, nor will the motion be adjudged to be too late.

February 9, 1884.

Equity. Practice in Superior Court. Jurisdiction. Wills. Minors. Parties. Estoppel. Guardian. Title. Practice in Supreme Court. Before Judge WILLIS. Monroe Superior Court. February Term, 1883.

This was a bill originally filed by John C. Goodwyn, Amanda P. Talmadge, for herself and as next friend of Tullia P. Goodwyn (afterwards Findley) and Puss C. Goodwyn (afterwards Freeman), against Bernier Pye, administrator *de bonis non* of Coleman G. Goodwyn, and numerous parties holding real estate under the administrator's sale hereafter stated. Numerous amendments

were made to this bill and the parties were materially altered, John C. Goodwyn being stricken, Mrs. Talmadge being also stricken as a party complainant, and in her capacity as guardian being made a party defendant; and C. H. Sharp, administrator, (he having succeeded to the administration of Goodwyn), and the administrator and executor of two of the other defendants being made parties. In its ultimate form, the bill was in favor of Tullia P. Findley and Puss C. Freeman, against Sharp, administrator *de bonis non*, a surety on the bond of Pye and the other defendants above stated. It is unnecessary to detail the complicated and conflicting claims of the parties, but the substantial points on which the decision of the Supreme Court rests may be gathered from the following facts: Coleman G. Goodwyn died on January 6, 1862, leaving a widow and five children, viz: Mrs. A. P. Talmadge, Tullia P. Goodwyn, Puss C. Goodwyn, John C. Goodwyn, and Mary A. Goodwyn, afterwards Ferguson. The decedent left a will containing the following among other items:

"Item 2. I will and desire that the whole of my estate, real and personal, be kept together and managed by my wife for the benefit of herself and my children during her life or widowhood. She is in no event to expend more than one-half the proceeds of farm produce or money at interest in support and maintenance of herself and children during her said management. I give her full power by purchase or exchange to supply the plantation with good plantation stock and necessaries of all kinds.

"Item 3. When either of my children attain the age of twenty-one years, or one of my daughters marries, I will that negro property to the value of fifty-seven hundred and sixty dollars be assigned by my executrix to such child, and if it be a daughter, then I bequeath such assignment to said daughter during her life, free from the debts or liabilities of any person she may hereafter marry, for her separate use and support, and to such persons as she may appoint by will after her death, and if she fails so to appoint, then to her heirs at law. The negroes so assigned must be appraised by three disinterested persons, and the overplus or deficiency in valuation to be paid in money.

"Item 4. In the event my wife marries, I give to her in negro property the sum of fifty-seven hundred and sixty dollars (said negroes to be appraised by three disinterested persons), in fee simple, and the balance of my estate to be kept together and distributed under the

third item of this will by the guardian of my children, to be appointed for that purpose.

"In the event my wife dies before the youngest of my children becomes of age or marries, I will the residue not assigned off to be kept together by the guardian, and be distributed as before, under and according to the third item of this will.

"Item 5. When all my children have become of age or married, I give the land on the other side of the creek (known as Todd's creek and Tobesofkee creek) from my residence. to be equally divided between my daughters; Tullia P., Amanda F., and Mary A., during life, and at their death, to their children. severally. If either die without children, to the survivors. If Mary A. and Tullia P both die without children, then one-half to Amanda P. and the other to John C. and Puss C., my other children.

"When all my children have become of age or married, I give all the land on this side Todd's creek to John C. and Puss C., or to my wife, if she be then single and unmarried and in life. At the death of John C. or Puss C. without children, to the survivor or representative. At the death of my wife, to be equally divided between John C. and Puss C., with children, then said land to go to said children *per stripe.* The land this side Todd's creek I wish cultivated by my wife, for the support and maintenance of herself and John C. and Puss C., after the design (division) contemplated under this item, and I wish my wife to keep a distinct account of the proceeds over and above a support, and such overplus be equally divided between John C. and Puss C., with the limitations, provisions and conditions that the division of the land is devised upon.

"Item 6. When my youngest child shall have attained the age of twenty-one years, or if my wife remains single and unmarried, then at her death I wish all the balance of my personal property and money, etc., to be equally divided between all my children, counting to each the advancement already made, so that, as to personal property, they receive equal portions of my estate; the shares going to my daughters to be theirs during life, for their separate use and support, and, at their death, to whomsoever they may appoint by will, and if they fail to appoint, then to their heirs at law.

"Item 7. When my youngest child becomes of age, I give my wife discretion to make such advancements to my children as she may think best, provided she gives to all equally., I have already advanced to Amanda P., in money and property, fifty-seven hundred and sixty dollars."

The widow of testator was appointed his executrix, and remained in possession until July 2, 1867, when she died. Pye was then appointed administrator *de bonis non.* During the August term, 1867, of court, Pye, administra-

tor, Mary A. Ferguson, her husband joining her, Amanda P Talmadge, and Pye, as guardian *ad litem* of the three children, Tullia P., John C. and Puss C., who were then minors, presented to the chancellor a petition in equity, setting out the will of Coleman G. Goodwyn, deceased, and alleging that the testamentary scheme was to keep the lands together, and that the widow should manage the same during her life or widowhood for the benefit of herself and children, and to maintain and support the latter, during their minority, from the proceeds of the estate, without encroaching upon the *corpus* thereof; that, by reason of the emancipation of slaves, and the fact that the money and notes belonging to the estate became worthless, and the plantation was without stock or implements, and the personal property was daily depreciating in value, and was insufficient to carry on the farming operations, the testamentary scheme had failed, and it was impossible to carry out the will. The petition therefore prayed that the lands be sold, and the proceeds be divided between the children of testator. An order was taken appointing Pye guardian *ad litem* for the minor children. The chancellor submitted the question raised by this petition to a jury. They rendered the following verdict:

"We, the jury, find and decree that the lands belonging to the estate of Coleman G. Goodwyn, deceased, be sold by the administrator of said estate; the land lying beyond Todd's creek and Tobesofkee to be sold, and the proceeds thereof to be equally divided between Amanda P. Talmadge, Tullia P. Goodwyn and Mary A. Ferguson; the lands this side of said creek to be sold and proceeds of said sale divided between John C. Goodwyn and Puss C. Goodwyn; the shares of said minor children, Tullia P., Puss C and John C., to be kept in the hands of the administrator until a guardian can be appointed by the court of ordinary for said minor children; and the distributive shares of said estate to be paid to each legatee of full age, subject to the limitations and restrictions declared in the last will and testament of said Coleman G. Goodwyn, deceased; and the distributive share of said minor children to be likewise subject to the same limitations and restrictions; said sale to be made upon such terms and conditions as to the said administrator may seem best for said estate and the interest of said legatees."

The chancellor entered a decree corresponding to this verdict. Under this decree, the administrator advertised and sold the property  Subsequently, Mrs. Talmadge, having been appointed guardian for Tullia P. and Puss C., cited the administrator to a settlement before the ordinary, and the case was carried, by appeal, to the superior court. Pye filed a bill to enjoin this collection from him, and in it he set out the proceedings under which the sale of the lands of his testator took place, and the sale itself, and alleged that, under the decree, the proceeds were charged with the limitations placed by the will upon the property itself, and that the money was liable to be wasted, and might not be forthcoming to the remaindermen. The bill prayed for direction. The defendants, including Mrs. Talmadge as guardian of Tullia P. and Puss C. Goodwyn, demurred to this bill, on the ground that there was no equity in it; that the decree rendered in the former proceeding was not ambiguous or doubtful, and that the questions raised by this bill, were *res adjudicata.* Under this demurrer, the bill was dismissed. Subsequently Mrs. Talmadge, as guardian of the minors, obtained a judgment against Pye, the administrator, and was proceeding to collect it, when the minors, by their next friend, George W. Goodwyn, and Mrs. Ferguson and her husband, filed their bill to enjoin her from collecting the amount. They alleged that they had an interest in the proceeds under the limitations of the will, besides the direct interest of the minors, that Mrs. Talmadge had but small means, and unless she gave proper security, the interests of the parties would be in danger. The court granted the injunction, to be dissolved upon her giving bond in an amount named. This she did, and to prevent loss by the surety on her bond, she consented for the money to be paid over to him. She has received some of the money from Pye, and has applied for an order of the ordinary to be allowed to use more of it for the benefit of the minors.

The present bill was filed to set aside the sale made in

1867, and to recover the interest of the two daughters who were then minors, Tullia P. and Puss C. It was insisted by the plaintiffs that the chancellor had no jurisdiction to grant the order for sale in 1867; that it was void for want of service, and as being based on a mere petition, and not a bill; that the minors were not properly made parties; that Pye, the administrator, was appointed their guardian improperly, and did not, in fact, represent the minors; and other grounds were alleged, not material here. Complainants alleged waste, and liability for the use of the property on the part of the purchasers, and offered to allow credit on that account for such sums derived from the sale of the land as had been appropriated to their benefit.

The purchasers insisted that they were *bona fide* purchasers for value. They denied any impropriety in the transaction, but asserted that if there were any irregularities they were unknown to them. They also insisted that the decree and the sale thereunder, made in 1867, were regular and lawful, and conveyed good titles; that the minors were estopped, and the validity of the sale established by the litigation in their behalf by their guardian, and by the recovery of the proceeds of the sale for them. They denied waste or any liability to the complainants, for the use of the property.

The jury found a special verdict in favor of the complainants, and a decree was entered thereon. Defendants moved for a new trial, on the following among other grounds:

(1.) Because the court submitted to the jury the following questions in writing, prepared by counsel for the complainants: "What amount of the proceeds of the sale of said lands were actually used for the benefit of the present complainants, Mrs. Findley and Mrs. Freeman, and when was the money received?" [The objection was that "the submission of this question ignored the idea that complainants were or could be bound by the act of their guardian, who received of Pye, administrator, their entire shares of

the sale of the lands, and bound them only to the extent of money that went to their actual support."]

(2.) Because the court refused the following request: "If you believe, from the evidence, that Mrs. Talmadge, as guar-dian for complainants, received from Pye, administrator, the proceeds of the sale of the lands in controversy, after she had knowledge of the alleged illegal decree, then such act of the guardian would bind complainants; and if you so believe, you should find for defendants."

(3.) Because the court erred in not submitting to the jury any question as to the price the lands brought, or as to the amounts paid from the proceeds of the sale to the guardian of complainants actually received from Pye.

(4.) Because the court refused the following request: "The will of Goodwyn provides for a possible survivorship as to the lands given to complainants, and this being true, the power to order a sale of lands could only be exercised by a court of chancery."

(5.) Because the court erred in refusing to submit to the jury any question as to whether the bill for direction had been filed by Pye against Mrs. Talmadge individually and as guardian, and dismissed on demurrer, because the decree for sale was properly obtained and of plain import; or as to the bill to which the present complainants were parties by their next friend; and in not making any ruling thereon.

(6.) Because the verdict is illegal and contrary to law, and does not cover the issues in the case.

(7.) Because the decree should not have been entered up on the verdict, and was wrong as entered.

The motion was overruled, and defendants excepted. They also filed a separate bill of exceptions, alleging errors in the decree entered up on the verdict.

When the case was called in the Supreme Court, the record was amended, by consent, so as to set forth the names of certain defendants below whose names had been omitted. Counsel for defendants in error moved to dismiss

the writ of error on various grounds, the substance of which was as follows:

(1.) Because the bill of exceptions states the names of the plaintiffs in error (defendants in the court below) as " C. H. Sharp, administrator of J. C. Pinkard, *et al.*," without stating the names of such plaintiffs in error.

(2.) Because the certificate of the presiding judge required the clerk to transmit the record to the " September, 1883," omitting the word " term."

(3.) Because the bill of exceptions was filed in the office of the clerk of the superior court on March 7, 1883, and the record was not sent to the Supreme Court until August 6, thereafter, and it did not appear that this delay was not caused by the fault of the plaintiffs in error or their counsel.

(4.) Because the certificate of the clerk to the transcript of the record states the case as being that of Tullia P. Findley *et al. vs.* Cyrus Sharp, administrator *de bonis non* of Coleman G. Goodwyn, deceased, *et al.*, without stating the names of the parties.

(5.) Because the parties named in the clerk's certificate do not appear to be the same as those named in the bill of exceptions.

(6.) Because the court below had no jurisdiction to pass on the motion for new trial, for the following reason: The motion was made at the February adjourned term, 1881, and a consent order was taken that it should stand over until the August term, 1881, with leave to perfect it and have the brief of evidence approved during that time. An order was taken at the August term postponing the hearing of the motion until the February term, 1882, unless heard before that time by agreement, and this order allowed movants to perfect their brief of evidence at any time before the final hearing. No further order was taken or entry made until February term, 1883, when the brief of evidence was approved and the motion heard. [It appears that the Hon. John D. Stewart, Judge of the Flint

circuit, was disqualified from presiding, and no judge qualified to preside could be obtained until the February term, 1883.]

When this motion to dismiss was made, counsel for plaintiffs in error moved to amend the bill of exceptions by inserting from the record the names of the plaintiffs in error, other than those mentioned. The court stated that this would be allowed, and overruled the motion to dismiss.

A. D. HAMMOND; JOHN I. HALL; R. P. TRIPPE, for plaintiffs in error.

LANIER & ANDERSON; E. W. BECK, for defendants.

JACKSON, Chief Justice.

1. The controlling question in this case is whether the judge of the superior court, as chancellor, has power or jurisdiction, on the petition of the executor of a will, in which legatees are parties and the minor legatees represented by the said executor as guardian *ad litem,* to order the sale of the real estate of such infants, at chambers. In this case, the order was passed in term, but there was no regular bill in equity filed and served acccording to law, though a jury passed on the necessity and propriety of the sale. So that the case may be considered as one at chambers, and the question is, had the judge of the superior court this jurisdictional power at chambers? If he had jurisdiction, what was done, though irregular, was not void, and purchasers for value at the sale would be protected, and as this is a suit brought by the infants, on arriving at age, to set aside the sale and recover the land, this question is vital. It seems to us clear that the act of 1866 (acts of 1865–6, p. 221), Code, §4214, in connection with sections 4221, 4222, 4223, 4224, of the Code, give the jurisdiction.

The act of 1866 was passed just after the war, when property had been swept away, and the struggle for bread and clothes to sustain life was the issue in all families whose heads had stood at the hearthstones of their fathers, and widowhood and orphanage were wailing in distress in every southern community. It is very broad and general in the sweep of its provisions, and leaves much to the discretion of judges of the superior courts. It enacts, "When for any reason already existing, or to exist, it becomes impossible to carry out any last will and testament, in whole or in part, the judges of the superior court shall have power to render at chambers, during vacation, any decree that may be necessary and legal in the premises." It is clear that the judges are to determine on the impossibility of carrying out the will, and the validity of the reason for action; otherwise, every decree rendered could be reopened and re-argued and reviewed on the issues of the validity of such reasons and the impossibility to carry out the will. But even if we would review those questions now, it seems to us the reasons were valid. It was impossible to carry out the will and preserve the land for the children, if they could not be supported, so as to enter upon and enjoy it. The petition alleged, and the judge concluded that, owing to the disastrous effects of the war and the total change of productiveness of landed property, a support could not be realized if the will were carried out, and thus it was impossible to carry it out. That it would be legal, in such a case, to decree a sale, see *Rakestraw, executrix, vs. Rakestraw et al.*, from Gwinnett county, 70 *Ga.*, 806.

True, there are certain provisos to the act. In respect to the provision that all parties consent in writing, we think the petition shows it, as the infants were represented by the executor, who was guardian *ad litem ;* and all, therefore, agreed in writing and assented to the facts, making no issue of fact. The judge, it is true, submitted to the jury the necessity of the sale under the circumstances, but

this was only to satisfy his own judicial mind of that ne-cessity, and was all unnecessary, as all parties agreed to the facts by signing the petition individually or repre-sentatively.

The executor was appointed guardian *ad litem*, and it is insisted that this appointment rendered void the entire pro-ceeding. We cannot think so. There was no conflict be-tween him and the minors; no interest of his was adverse to theirs; and if so, whilst it would have been better to have appointed another, it would hardly make the whole pro-ceeding absolutely void. See 59 *Ga.*, 729. So that the act of 1866 would seem to give jurisdiction of cases of the class to which this evidently belongs.

But when we turn to sections 4221 *et seq.*, all doubt ought to vanish. It enacts, " All proceedings *ex parte*, or in the execution of the protective powers of chancery over trust estates, or the estates of the wards of chancery, may be presented to the court by petition only, and such pro-ceedings be had therein as the necessity of each cause shall demand." In one sense, this is a trust estate, be-cause the will is a great trust confided to the executor, in confidence that he will execute that trust for the benefit of the legatees, and perhaps jurisdiction, under this section, might, by a broad construction of this remedial statute, be found; but when the other clause is considered—" or the estates of the wards of chancery "—can there be any rational doubt of the jurisdiction of this case ?

The very minute this petition came before this chancel-lor and disclosed the fact that the land of infants was in-volved, his wards were before him, and the case was con-cerning " an estate of the wards of chancery." The case was made where these wards were suffering or likely to suffer; where their property must be changed, so as to realize for them the necessities of life, and it was neces-sary that his protective powers be exercised to make such decree as would relieve that necessity, and at the same time protect the estate by looking to the re-investment

and preservation of the fund. Again, the "proceedings" to "be had therein" are to be such "as the necessity of each case may demand." Of that necessity he is the judge and the only judge. If the infant be not safe in his breast, where shall he look for help? If chancery protect not her wards, what guardian, what law, can protect them? I had rather confide an infant to the custody and care of an honest judge than to any jury ever sworn to find facts and apply law.

Section 4222, which is the next, gives power to act at chambers, on the single condition that the record be preserved by "always transmitting the entire proceedings to the clerk, to be entered on the minutes or other records of the court."

And section 4224 provides, "If minors are interested, and they have no guardians, guardians *ad litem* must be appointed and notified, before the case proceeds." The executor was appointed in this case, and as to the legality or propriety and effect of that appointment, we have already considered.

See, on the subject of these jurisdictional powers at chambers, *Iverson, trustee, et al. vs. Saulsbury, trustee, et al.*, 65 *Ga.*, 724, and cases following that, down to the present term in *Weems and wife vs. Coker.*

2. We think, therefore, that, without more, these purchasers for value at the sale under this decree, would be protected in equity, or at least, that equity would decline to assist others, even infants, to disturb a title so acquired; but in the case at bar, it appears that the decree provided that the money acquired from the sale be turned over to the regular guardian of these infants; that the guardian sued for it, and it was turned over to her by the court of ordinary, at the end of much litigation on bills in equity between the guardian and executor, and a *prochein ami* of the infants and the executor, in which this decree was set up and elied upon by these representatives of these minors. Surely these infants, by their representatives, thus acquir-

ing this fund under this decree, would be estopped from denying the validity of the decree. Is not the validity of it *res adjudicata*, so far as the guardian or other legal representative of theirs, in recognizing it and acquiring funds under it, are concerned; and if *res adjudicata* as to these their legal representatives in court, is it not so as to them?

The distinguished counsel for defendant in error seemed to concede, and must concede, that had the issue of its validity been directly made, it would have been *res adjudicata* as to the infants, it being so as to the guardian. But was not the validity, the binding form of that decree, in issue, to all intents and purposes, in the cases in which these infants were represented? We think so. In fact, it appears to have been put in issue by demurrer.

But where one sues for and recovers under a judgment or decree, and acquires money or property thereby, in litigation with others for the fund proceeding from that decree, does he not necessarily put the validity of that decree in issue? And will he be permitted to attack it for want of jurisdiction afterwards in a contest with the very people who paid the money which was recovered under the decree? We think not. Therefore, as these plaintiffs, through their guardians, got the money which defendants paid for this land in litigation, during which the validity of this decree was necessarily in issue, we think, being fully represented in court on that issue at the time, it is too late now to question its validity, and equity will estop them from doing so, because, through their guardian, they acquired property, money, under it, and may not assail it; certainly not without refunding the principal and interest acquired under the decree.

3. There is no doubt the defendants are innocent purchasers for value to the full worth of this property, when bought,—that they acted *bona fi·le*. Against such defendant. equity is loth to interfere; and though ever tender to infants, equity will turn even them over to guardians

v 71 43

and their sureties, rather than disturb such honest, inno-
cent, *bona fide* parties in actual possession, and dispossess
them of that for which they paid the last cent it was worth.

4. The fact that the judge proceeded in term to consider
the petition, and called in the jury to pass on the necessity
of the sale, cannot affect the proceeding so as to render it
less effectual than at chambers.   On the contrary, it was
open, public, known to all the world, in full view of all the
county, and really differed from a regular decree in equity
only in the respects that it was founded, not on bill but on
petition, was not filed so long a time before court, was
not regularly served before court; but all parties appeared,
and the case was tried in other respects, as other regular
bills. . If this differs in legal effect from a hearing in cham-
bers, it differs only to strengthen the decree.

5. A new trial being granted, the decree in the case at
bar falls, and it becomes unnecessary to pass upon the ex-
ceptions to the decree, or the motion to dismiss the writ
of error founded on a separate bill of exceptions, as to the
decree.

As it was unnecessary, to say the least, to bring the ex-
ceptions to the decree in a separate bill of exceptions, the
plaintiff in error must pay the costs of that second bill.

6. In respect to other grounds to dismiss, it is enough
to say that the motion founded on want of parties is healed
by the amendment from the record, they being parties
plaintiffs in error, and no service being necessary.

7. The burden is on the defendant in error, to show that
the clerk was delayed by counsel for plaintiff in error, or
by the plaintiff's own conduct so as to take the case out of
the act of 1877, providing for cases reaching this court af-
ter return day.

8. Where a motion for a new trial goes over to another
regular term, and no action is had upon it, it will stand
continued just as any other case in the court below.   As
either party can call it up, if neither does, both are at fault,
it will be considered as passed over by consent, and the writ

of error will not be dismissed for that reason, nor will the motion be adjudged as too late.

Judgment reversed.