CITY OF MACON *et al. v.* HERRINGTON.

No. 14923.  December 1, 1944.

*E. W. Maynard* and *Ellsworth Hall Jr.,* for plaintiffs in error.
*Anderson, Anderson & Walker,* contra.

BELL, Chief Justice. ▇ We consider first the motion to dismiss the writ of error. The main question presented thereby is whether the bill of exceptions should have been tendered for certification within 20 days from the judgment granting a mandamus absolute, it not having been so tendered, although it was tendered within 20 days from the judgment overruling the motion for a new trial.

In *Board of Veterinary Examiners* v. *Ruffin,* 147 *Ga.* 441 (supra), this court in a unanimous decision ruled as follows: "Where after final judgment by the court upon an agreed statement of facts, without the intervention of a jury, in a mandamus case, a motion for new trial is made, and at the hearing a judgment is rendered dismissing the motion, Civil Code § 6153 [Code of 1933, § 6-903], as construed in *Holder* v. *Jelks,* 116 *Ga.* 134 (42 S. E. 400), and *Bacon* v. *Jones,* 116 *Ga.* 136, 139 (42 S. E. 401), is applicable, and a bill of exceptions assigning error upon such judgment should be presented to the trial judge for certification within 20 days after the ruling complained of. In this case the bill of exceptions was not so presented within 20 days after the ruling complained of; and on motion the writ of error is dismissed." An examination of the record in that case shows that the judgment from which the 20 days should be calculated, as ruled in the decision, was the judgment granting the mandamus absolute. Accordingly, that decision is directly in point, and as it stands would require a dismissal of the writ of error in the instant case. Counsel for the plaintiffs in error have requested that the decision in the *Ruffin* case be reviewed and overruled, and while various decisions have been cited on both sides, we regard the *Ruffin* case as being the only controlling authority upon the question here under consideration, and therefore it becomes necessary to inquire into the soundness of that decision.

It is declared in the constitution that the superior courts "may grant new trials on legal grounds." Code, § 2-3206. The *statutes* on the subject include the following: "The several superior courts shall have power to correct errors and grant new trials in causes or collateral issues depending in any of the said courts, in such manner and under such rules and regulations as they may establish according to law and the usages and customs of courts." Code, § 70-102. "In all applications for a new trial on other

grounds, not provided for in this Code, the presiding judge must exercise a sound legal discretion in granting or refusing the same according to the provisions of the common law and practice of the courts." § 70-208. The Code also provides for the review of judgments of the superior courts by ordinary bills of exceptions and by fast bills of exceptions. As to the former, and in part as to cross-bills, see §§ 6-901, 6-902. The section next following provides for fast bills of exceptions, and is in part as follows: "In all applications for discharge in bail trover and contempt cases; in all criminal cases; and in all cases granting or refusing applications for injunction or receiver; granting or refusing applications for alimony, mandamus, or other extraordinary remedy . . the bill of exceptions shall be tendered and signed within 20 days from the rendition of the decision." § 6-903. This section was based originally upon an act passed in 1870, providing for the first time in this State for what are commonly known as fast bills of exceptions or fast writs of error, the scope of which has been enlarged from time to time by subsequent legislation. Ga. L. 1870, p. 406; Code of 1873, §§ 3212-3216; *Temple Baptist Church* v. *Georgia Terminal Co.,* 128 *Ga.* 669, 674 (58 S. E. 157).

Referring to mandamus cases only, the Code also provides: "Upon refusal to grant the mandamus nisi, the petitioner may have his bill of exceptions to the Supreme Court, as in cases of the granting and refusing of injunctions; and either party dissatisfied with the judgment on the hearing of the answer to the mandamus nisi may likewise file his bill of exceptions." § 64-110. This latter section was codified from the act of September 26, 1883, fixing the time and method of trial of cases of mandamus before the judges of the superior court and in the superior and Supreme Courts. Ga. L. 1882-83, p. 103.

In *Thompson* v. *McGhee,* 93 *Ga.* 254 (19 S. E. 32), it was held that under this statute and the law as now embraced in the Code, § 6-903, a bill of exceptions assigning error on a judgment refusing mandamus absolute must be tendered within 20 days from the date of such judgment, whether rendered in term or during vacation. There was no motion for new trial in that case. The decision in the *Ruffin* case refers only to *Holder* v. *Jelks,* 116 *Ga.* 134, and *Bacon* v. *Jones,* 116 *Ga.* 136. In the *Holder* case, it was held that "No judgment in a mandamus case, though the same be one finally

disposing of it upon its merits, can be properly brought to the Supreme Court except by a 'fast' bill of exceptions." While this is a correct statement of the law, there was no motion for a new trial in that case. In *Bacon* v. *Jones,* the question for decision was whether the phrase, "or other extraordinary remedy," as now contained in the Code, § 6-903, embraced a writ. of prohibition, so as to bring cases of that class within the statute as to fast bills of exceptions. The question was answered in the negative, but in the course of the opinion, it was said: "Prior to 1870 every such case brought to this court came up under the general law, which required a bill of exceptions to be signed and certified within thirty days from the adjournment of the court. In 1870 the legislature enacted that in cases of application for injunction and the granting or refusing of the same, in applications for the appointment of a receiver or other extraordinary remedy in equity, the dissatisfied party might bring the case to this court within ten days thereafter. Subsequently this time was increased to twenty days. The terms of this act show plainly that it applied to interlocutory and not to final judgments. The provisions of the act were afterward extended to other cases including those in which complaint was made of the granting or refusal of temporary alimony, the granting or refusal of attachments against fraudulent debtors, applications for the discharge of the defendant in bail-trover proceedings, applications for mandamus absolute, quo warranto, and to all criminal cases. Each of the acts thus extending the act of 1870 applied to interlocutory judgments, or to judgments rendered without the verdict of a jury, except the acts relating to mandamus, to quo warranto, and to criminal cases. These latter acts, by their very terms, applied to final judgments after a trial before a jury. . . Invoking the history of the legislation upon these subjects, we find that there were but three classes of cases which the legislature provided should be brought to this court by 'fast' writ of error after final trial before a jury: criminal cases and applications for mandamus absolute or quo warranto. . . All the other legislation upon the subject referred to judgments and decrees rendered at chambers or on final trial without a jury. . . In the codification of the laws it is almost impossible to go into all the details of the different statutes codified. Where the Code sections are incomplete or ambiguous, they must be construed in connection with the original acts."

The Code, § 6-904, provides that "All bills of exceptions in criminal cases shall, as regards the practice both in the lower court and in the appellate court, relating to the time and manner of signing, filing, serving, transmitting, and hearing the same, be governed, in all respects where applicable, by the laws and rules in reference to bills of exceptions in cases of injunction, and it shall be the duty of the appellate court to give a speedy hearing and determination in such cases, either under existing rules or under special rules to be formulated by said court for that purpose." This statute makes no reference to motions for a new trial, and yet, according to the common practice and the decisions, where a motion for a new trial is filed and overruled or dismissed in a criminal case, the bill of exceptions will be in time if it is tendered within 20 days from such judgment, regardless of the date of sentence. *Walker* v. *State,* 124 *Ga.* 440 (52 S. E. 738); *Glawson* v. *State,* 140 *Ga.* 14 (78 S. E. 188). In *Singer Manufacturing Co.* v. *Lancaster,* 75 *Ga.* 280, this court held: "It is a power inherent in the superior court, upon a motion for new trial, to review its own rulings and grant a new trial; and this is confirmed by express enactment, providing for the exercise of a sound discretion in granting or refusing a new trial, in cases not expressly provided for."

At common law, even after verdict, judgments were not entered until a motion for a new trial was filed and disposed of, or the time for such motion had expired; it being considered that the trial was not concluded until the motion for a new trial, if lawfully interposed, was determined. *Gardner* v. *Cumming,* 1 *Ga. Dec.* 1 (1 Michie's *Ga. Repts. Ann.* 513); Kingman v. Western Manufacturing Co., 170 U. S. 675 (18 Sup. Ct. 786, 42 L. ed. 1192); 46 C. J. 67, 303, §§ 18, 279. It is also the generally accepted doctrine that where a motion for a new trial is seasonably filed, the time for suing out a writ of error is to be computed from the date of the denial of the motion, and not from the date of the rendition or entry of judgment, where the motion for a new trial was necessary to a review of the questions involved. 3 Am. Jur. 149, § 435; 4 C. J. S. 901, § 441; City of Memphis v. Brown, 94 U. S. 715 (24 L. ed. 244); United States v. Ellicott, 223 U. S. 524, 539 (32 Sup. Ct. 334, 56 L. ed. 535); Luckenbach Steamship v. United States, 272 U. S. 533-540 (47 Sup. Ct. 186, 71 L. ed. 394); Shannon v. Shaffer Oil & Refining Co., 51 Fed. 2d, 878 (78 A. L. R. 851).

This rule is plainly implicit in the Georgia law as to ordinary cases, for if a motion for a new trial is filed and granted, the judgment as well as the verdict is thereby vacated. *Sharp* v. *Findley,* 71 *Ga.* 654 (5); *Holston Box & Lumber Co.* v. *Vonberg,* 160 *Ga.* 813 (129 S. E. 92). It has been repeatedly held by this court that where a case has been tried by a jury and a verdict rendered therein, and the losing party desires to test the sufficiency of the evidence to support the verdict, a motion for a new trial is indispensable. *Macklin* v. *Blalock,* 133 *Ga.* 550 (4) (66 S. E. 265, 134 Am. St. R. 220); *Beall* v. *Mineral Tone Co.,* 167 *Ga.* 667 (146 S. E. 473); *Fleming* v. *Collins,* 190 *Ga.* 210 (3) (9 S. E. 2d, 157).

The question here turns mainly on the proper construction of the Code, § 64-110, but the provision should be considered in connection with the other laws. Was it the intention of the General Assembly in enacting this statute to exclude entirely the right to file and prosecute a motion for a new trial in a mandamus case? If so, the statute would clearly violate the provision of the constitution which declares without qualification that the superior courts "may grant new trials on legal grounds." Code, § 2-3206. If such was not the intention, was it then the purpose of the lawmakers to make it incumbent upon the losing party, in case he filed a motion for a new trial, to prosecute the same with such haste as to obtain a judgment thereon within 20 days from the judgment granting or refusing a mandamus absolute, in order to obtain a review of a judgment refusing his motion for a new trial in the event of such refusal?

In view of what has been stated above as to the general right to file and prosecute a motion for a new trial, and the principles of law that are ordinarily incident to such right, we have reached the conclusion that each of the questions just stated should be answered in the negative; that is to say, that the Code, § 64-110, does not affect the right to file and prosecute a motion for a new trial in a mandamus case, and does not limit the time within which such a motion must be disposed of. We are also of the opinion that, where a judgment granting a mandamus absolute has been entered on a verdict finding in favor of granting such relief, and a motion for a new trial is made and overruled, a bill of exceptions complaining of the judgment overruling such motion will be in time if tendered within 20 days from the latter judgment. The

statute, like that which provides for writs of error in criminal cases, makes no reference to motions for new trial, but is merely silent on the subject, and we think that it should be construed in harmony with the general law relating thereto. *Banks* v. *Darden,* 18 *Ga.* 318 (3); *Trustees of First Methodist Church* v. *Atlanta,* 76 *Ga.* 181 (3 b); *Botts* v. *Southeastern Pipe-Line Co.,* 190 *Ga.* 689, 700 (10 S. E. 2d, 375); *Cornwell* v. *Atlanta Trust Co.,* 177 *Ga.* 303 (170 S. E. 194). See also, in this connection, *Henderson* v. *Young,* 179 *Ga.* 540 (176 S. E. 388), relating to quo warranto. The decision in *Board of Veterinary Examiners* v. *Ruffin,* 147 *Ga.* 441 (supra), is therefore deemed to be unsound, and on formal review it is overruled. This is not to hold that, if a motion for new trial should be *granted,* the right of review would exist. In such a case, the granting of the motion would vacate the judgment of mandamus if one had already been entered, and hence there would be no final judgment either granting or refusing a mandamus absolute. However, the question as to whether a writ of error would lie in such a case is not now before us, and what we have just stated on this point is merely cautionary. See *Bridges* v. *Poole,* 176 *Ga.* 500 (168 S. E. 577), and compare the practice in Georgia before the Code of 1863, also the Federal practice. Code of 1863, § 4159; Cobb's Digest, p. 448; *Allen* v. *Savannah,* 9 *Ga.* 286 (3); Schlosser *v.* Hemphill, 198 U. S. 173 (25 Sup. Ct. 654, 49 L. ed. 1000); Bruce *v.* Tobin, 245 U. S. 18 (38 Sup. Ct. 7, 62 L. ed. 123); Shannon *v.* Shaffer Oil & Refining Co., supra.

The conclusion that we have reached harmonizes with the actual decision in *Bridges* v. *Poole,* supra, although the opinion in that case contained some language which was broader than the facts, the judgment there under review, so far as related to mandamus, being one *overruling* a demurrer to a petition. Our conclusion is likewise in harmony with all other decisions, relating to judgments overruling demurrers, such as *Board of Education* v. *Sheffield,* 177 *Ga.* 100 (169 S. E. 302); *MacNeill* v. *Wood,* 197 *Ga.* 237 (28 S. E. 2d, 747); *Nichols* v. *Hampton,* 198 *Ga.* 327 (31 S. E. 2d, 659). It also accords with the ruling in *Bradley* v. *Shelton,* 189 *Ga.* 696 (7 S. E. 2d, 261), as to the time in which exception may be taken to a judgment refusing a new trial in an injunction case, since the rules as to fast bills of exceptions apply in injunction cases only to interlocutory orders "granting or re-

fusing applications for injunction." See the decisions cited in that case; also *Bacon* v. *Jones,* supra; *Miller* v. *Gibbs,* 161 *Ga.* 698 (132 S. E. 626); *Elliott* v. *Adams,* 173 *Ga.* 312 (160 S. E. 336). Nor is there anything contrary in either of the following decisions: *Commissioners of Thomas County* v. *Hopkins,* 118 *Ga.* 643 (45 S. E. 433), holding that a bill of exceptions complaining of a refusal to grant a new trial was premature, when it appeared that no mandamus absolute had been entered on such verdict; or *Powell* v. *Georgia Public-Service Commission,* 186 *Ga.* 420 (197 S. E. 792), in which the motion that was filed was not a motion for a new trial. 4 C. J. S. 901, § 441.

What has just been said deals sufficiently with the principal question raised by the motion to dismiss the writ of error. Another contention presented thereby was that exceptions pendente lite should have been taken to the judgment granting a mandamus absolute, since the bill of exceptions was not tendered until more than 20 days after such judgment, even though it was tendered within 20 days from the judgment overruling the motion for a new trial. There is no merit in this contention. *Albany Federal Savings & Loan Assn.* v. *Henderson,* 198 *Ga.* 116 (31 S. E. 2d, 20). It follows that the motion to dismiss the writ of error must be denied.

There have been instances in which this court has decided cases without ruling on or even mentioning motions to dismiss that were filed, where it appeared from an examination of the record that the judgment when considered on its merits should be affirmed. *Clisby* v. *Macon,* 191 *Ga.* 749 (13 S. E. 2d, 772); *Lifsey* v. *Mims,* 193 *Ga.* 780 (20 S. E. 2d, 32). Whether this be the proper practice or not, the court in these instances, and in others that might be mentioned, was evidently motivated by the desire to decide every case on its merits, if it could be done; and where a judgment is affirmed, neither party is harmed by the failure of the court to rule on a motion to dismiss the writ of error. See, in this connection, *Central of Georgia Ry. Co.* v. *Blackman,* 7 *Ga. App.* 766, 769 (68 S. E. 339).

While the instant case, as will be seen presently, is one in which the judgment must in like manner be affirmed, nevertheless we consider the questions raised by the motion to dismiss to be of such gravity and importance that they ought to be determined.

■ One of the contentions of the plaintiffs in error, the defendants in the trial court, is that the petitioner was not entitled to the pension claimed unless her husband was an active member of the fire department, whereas at the time of his death he was a retired, pensioned, and inactive member of said department. The pertinent provisions of the pension act (Ga. L. 1939, p. 1149) have been quoted in the preceding statement. The petition relies upon subsection (p), reading in part as follows: "To the widow and child or children of any member who dies from causes not attributed to his active duties in the departments, providing that such member shall have been a member of such department for ten (10) years prior to the date of his death, the trustees shall authorize and direct payment, in equal monthly installments, as follows: (1) To the widow twenty dollars ($20.00) a month until her death or re-marriage."

As will be noticed, this provision refers without qualification to "any member," and while other portions of the act may on technical analysis contain some implications favorable to the contention made, yet there are still other parts that contain stronger implications to the contrary. It is generally held that statutes of this nature should be liberally construed; and considering this act as a whole, we are of the opinion that, even if it might be inferred that the petitioner's husband had been duly placed on pension, this fact would not prevent him from being a member of the fire department at the time of his death within the meaning of such statute. As to liberal construction, see *Van Treeck* v. *Travelers Insurance Co.*, 157 *Ga.* 204 (121 S. E. 215); 40 Am. Jur. 363, § 962; 48 C. J. 787, § 4.

Moreover, the evidence showed without dispute that the deceased had been a member of the fire department continuously for more than ten years before he obtained sick leave on May 20, 1940, and that during this period he was never retired or pensioned. It appeared that the authorities attempted to place him on pension a short time before his death, and that during the afternoon next before his death the chief of the fire department delivered to his wife either a sum of money or a check as a pension for him, but that he died without knowledge of this transaction. Nor did he ever apply for a pension or consent to any action respecting such matter. In these circumstances, he never became a pensioned mem-

ber, nor would the mere fact that he was on sick leave prevent him from being a member within the meaning of subsection (p).

■ It is contended that the decision of the trustees of the pension fund refusing the petitioner's claim was a quasi-judicial act, and therefore, if it was subject to review at all, the writ of certiorari was the remedy. There is no merit in this contention. The power conferred by the statute upon these trustees as related to the matter in question was neither judicial nor quasi-judicial, but was plainly ministerial and administrative. *Daniels* v. *Commissioners of Pilotage,* 147 *Ga.* 295 (2) (93 S. E. 887); *Southeastern Greyhound Lines* v. *Georgia Public-Service Commission,* 181 *Ga.* 75 (181 S. E. 834, 102 A. L. R. 517).

■ A further contention is that since this statute provided a new right and a remedy therefor and did not expressly provide for a review of decisions of the trustees, their decision in this matter was final and not subject to review in any manner by the courts. In support of this contention, counsel cited first the case of *Board of Education* v. *Hudson,* 164 *Ga.* 401 (138 S. E. 792). That decision was based upon a statute conferring power upon boards of education to consolidate school districts subject to a vote of the people, which power it was said was a political power and not reviewable in equity, in the absence of some provision by statute for such review. The present case is materially different both as to the law and the facts. Other cases cited were: *Smith* v. *Board of Trustees for Relief,* 173 *Ga.* 437 (160 S. E. 395); *Holcomb* v. *Smith,* 175 *Ga.* 566 (165 S. E. 581); *Hooten* v. *Holcomb,* 177 *Ga.* 561 (170 S. E. 803); *Smith* v. *Holcomb,* 45 *Ga. App.* 834 (166 S. E. 218). Each of these cases involved a claim that was asserted under a pension act applicable to the City of Atlanta. As to each of these cases, we may say, first, that the statute there under construction was not identical with the Macon act. While some of its provisions may have been similar, it contained no such direct and specific *command* as that of the Macon act on which the plaintiff relies, to wit, that to the widow, under conditions enumerated, "the trustees shall authorize and direct payment in equal monthly installments as follows: . ." Under this statute as applied to the facts, the trustees had no discretion, but were bound to pay to the widow the sum prescribed. Code, § 64-101; *Trotzier* v. *McElroy,* 182 *Ga.* 719 (186 S. E. 817); *Hollis* v. *Jones,* 184 *Ga.* 273 (191

S. E. 127); *West* v. *Anderson,* 187 *Ga.* 587 (1 S. E. 2d, 671); *DeWitt* v. *Richmond County,* 192 *Ga.* 770 (2) (16 S. E. 2d, 579). Under these decisions, the petitioner had a vested right based upon a valuable consideration, and was not seeking a gratuity. The right as given by subsection (p) was one that ran directly against the trustees in their official capacities, and as to this particular right, it would be incorrect to say that the act itself provided any sort of remedy. It necessarily follows that the petitioner was entitled to the writ of mandamus as prayed.

With further reference to the Atlanta cases first mentioned, it may be observed that none of the three decisions by this court was concurred in by all the Justices; no mention was made of the contractual element noticed in the later cases; nor were the facts identical with those of the present case. However, without either approving or disapproving these decisions as applied to the statute and the facts to which they related, we hold that, under the Macon act, the writ of mandamus was an available remedy, on the facts of the instant case. See generally, in this connection, 38 C. J. 718, § 313; 40 Am. Jur. 993, § 39; 34 Am. Jur. 859, § 70.

■ Under the preceding rulings, the judge did not err in striking the amendment to the defendants' answer, or in directing the verdict for the petitioner, and it was not error to refuse a new trial.

*Judgment affirmed.  All the Justices concur.*