### 61786. ALLISON v. DOMAIN et al.

Deen, Presiding Judge.

Rufus H. Allison appeals from the denial of his request for a declaratory judgment and writ of mandamus.

The following facts are agreed upon by the parties. Allison was employed as a law enforcement officer by the Alcohol and Tobacco Tax Unit of the Georgia Department of Revenue from March of 1961 until February of 1978. In 1975, he served as district supervisor in northeast Georgia, was assigned a state law enforcement vehicle and was responsible for providing vehicle supplies and accessories for the use of the law enforcement personnel under his supervision. He was also required to be on duty twenty-four hours a day, seven days a week. His duties included the usual investigatory and enforcement activities for his department including the service of warrants. As area supervisor, he was required to maintain the law enforcement vehicles and to obtain supplies regularly from the warehouse in Atlanta and to store them in the local warehouse.

On November 17, 1975, appellant picked up a load of oil, sparkplugs and antifreeze from the Atlanta warehouse and transported it to the local warehouse. While unloading a fifty-pound case of antifreeze, Allison experienced a severe pain in his lower back and fell into the storage area of his vehicle and was unable to move his legs. He received medical treatment for his injury and was able to return to work after about four weeks of disability, but he continued to experience some pain and discomfort. On November 30, 1976, while serving an Executive Citation Order on the D.V.A. Club in Gainesville, Georgia, he slipped on a broken portion of the parking lot, stumbled, and experienced a severe back pain. He immediately sought medical treatment and was on sick leave from February 7, 1977, until September 1, 1977. He then returned to work on a limited basis (three to four days per week) until January 31, 1978, when he reached mandatory retirement age.

From May of 1977 to September of 1979, appellant made seven applications for disability retirement benefits to the State Employees Retirement System. After each of the first six evaluations denying his application, Allison submitted additional information. After the seventh review, the Medical Board recommended that he be retired on disability retirement benefits. The Board of Trustees of

the State Retirement System ruled that he was eligible for service retirement benefits under Code Ann. § 40-2501 *et seq.* and for disability retirement benefits under Code Ann. § 40-2505 (3) (b) (first paragraph), and that he could elect the plan which paid the highest benefits. The Board, however, ruled that he was not eligible for the higher benefits provided by a "line of duty" disability under Code Ann. § 40-2505 (3) (b) (second paragraph) because his disability was not caused by "an act of external violence or injury incurred in the line of duty." *Held:*

There is no question as to Allison's permanent disability. The sole issue for decision is whether he is entitled to the higher disability benefits provided under the second paragraph of Code Ann. § 40-2505 (3) (b) which provides in part: ". . . any officer or agent of the Georgia Bureau of Investigation, and Alcohol and Tobacco officer or agent of the Department of Revenue who as a contributing member of this system and who, upon becoming permanently disabled due to an act of external violence or injury incurred in line of duty, becomes eligible for disability retirement allowances, shall, after a medical examination and upon certification by the medical board that such member is, in their opinion, permanently disabled, be entitled to a monthly allowance. . ."

The trial court interpreted the statute as follows: "(1) The General Assembly sought to provide increased disability benefits and earlier eligibility for such benefits to a special class of government employees, *i.e.* State law enforcement officers who suffer such disability because of the increased risk of violent, accidental or negligently caused injury in the line of duty inherent in their employment; (2) But for this increased risk, the job of a law enforcement officer is not distinguishable on a risk basis from any other job in government; (3) Thus, one who is not disabled because of this increased risk in his law enforcement duties is not entitled to the special increased disability benefits paid to one who is so disabled; (4) 'External violence' means intentional force caused by a third party to harm such law enforcement officer which produces injury; (5) 'Injury' means an injury proximately caused by an accident or by the negligence of the law enforcement officer or of a third person arising from the increased risk in his law enforcement duties while the law enforcement officer is in the line of duty; (6) 'Line of duty' means an activity which is directly related to law enforcement and which is primarily in furtherance of law enforcement duties as distinguished from clerical, administrative, managerial, maintenance or proprietary duties and functions which may be only incidental to law enforcement duties and functions; (7) When an injury results from external violence, negligence, or accident sustained in the line of duty

and arising out of the law enforcement duties of a law enforcement officer, such injury comes within the ambit of increased disability benefits."

The legislative intent is not to be found within the statute and the legislature did not include "line of duty" in the list of definitions contained in Code Ann. § 40-2501. We agree with the trial court that a court's fundamental task in interpreting a statute is to ascertain the intent of the General Assembly. *Barton v. Atkinson,* 228 Ga. 733 (187 SE2d 835) (1972); Code Ann. § 102-102 (9).

". . .[A] statute must be construed with reference to the whole system of which it is a part. . . 'All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.' " *Botts v. Southeastern Pipe-Line Co.,* 190 Ga. 689, 700 (10 SE2d 375) (1940). Further, it has long been held that remedial statutes be given a liberal construction. *City of Macon v. Herrington,* 198 Ga. 576 (32 SE2d 517) (1944) (widow's retirement benefits); *Van Treeck v. Travelers' Ins. Co.,* 157 Ga. 204 (121 SE 215) (1924) (Workmen's Compensation Act.)

The legislative history of the State Employees Retirement Act shows that the provision in question was added by amendment in Georgia Laws 1962, pp. 152-54, and applied only to law enforcement officers of the Department of Public Safety and the Georgia Bureau of Investigation. In 1975, pursuant to Georgia Laws 1975, pp. 1499 *et seq.* law enforcement officers of the Department of Revenue and the Department of Natural Resources became eligible for "line of duty" disability benefits.

The fourth paragraph of Code Ann. § 40-2505 (3) (b) was added by Ga. L. 1976, p. 1407, to provide that the additional benefits theretofore available for the uniformed division of the Department of Public Safety, law enforcement personnel of the Department of Public Safety, law enforcement personnel of the Department of Natural Resources, officers and agents of the Georgia Bureau of Investigation, and officers and agents of the Alcohol and Tobacco Unit of the Department of Revenue would also be provided for "any employee of the Department of Natural Resources commissioned as a deputy conservation ranger." In so providing, however, the legislature used in lieu of the phrase "in line of duty" the phrase "in the line of law enforcement duty." Therefore, as to a deputy conservation ranger, the General Assembly specifically limited the

eligibility for benefits to a claim based upon injury incurred in the line of *law enforcement duty.* The fact that the legislature did not see fit to use the same language with respect to the other officers and agents covered by this section is clearly indicative of the intention that the language is to have a different meaning as applied to the other covered employees than it does as applied to a deputy conservation ranger.

We must disagree with the trial court's interpretation of the phrase "in line of duty." In *Board of Trustees &c. Pension Fund v. Christy,* 246 Ga. 553 (272 SE2d 288) (1980), the Supreme Court affirmed this court's holding in the same case in 154 Ga. App. 488 (269 SE2d 33) (1980), that the phrase means "arises out of and in the course of employment" as defined by the Workers' Compensation Act.

We further disagree with the trial court's finding that these benefits were provided for law enforcement officers because of their exposure to increased risk of violent or other injury. No doubt the risk factor was considered by the legislature when this act was passed, but we do not believe that it was the sole reason for providing increased disability benefits for these employees. Under the first paragraph of Code Ann. § 40-2505 (3) (b), all state employees are entitled to disability benefits after the attainment of fifteen years of service. This section is modified to thirteen years and four months under § 40-2505 (4) (f). We can see that it would be difficult for various state departments to attract qualified job applicants and to retain trained law enforcement officers who are expected to be on duty twenty-four hours a day, seven days a week unless an attractive benefit package is provided. Such benefits would also be attractive to these officers in place of additional monetary compensation. We, therefore, find that the trial court's holding that line of duty disability benefits are available to law enforcement officers only if the injury is incurred during a "risk" situation is incorrect.

We adopt the meaning of "line of duty" as it is found in *Board of Trustees &c. Pension Fund v. Christy,* supra, and find that Allison's injury was incurred in the line of duty within the meaning of the second paragraph of Code Ann. § 40-2505 (3) (b).

*Judgment reversed. Banke, J., concurs. Carley, J., concurs specially.*

DECIDED MAY 15, 1981.

*Maylon K. London,* for appellant.
*Arthur K. Bolton, Attorney General, Brian J. O'Shea, Staff*

*Assistant Attorney General, Carl C. Jones, Assistant Attorney General,* for appellees.

CARLEY, Judge, concurring specially.

I concur in the majority opinion and agree with all that is set forth therein. I would like to add that it is my opinion that in using the phrase "due to an act of external violence or injury incurred in the line of duty" the legislature meant to set forth *two* sets of circumstances under which a covered employee would be entitled to the additional benefits provided by that section. One is, as is involved here, where an employee *while on duty* sustains *any* injury from any cause which results in permanent disability. The other situation whereby a covered employee would be entitled to the additional benefits would be where permanent disability was due "to an act of external violence" regardless of when or where that act of external violence occurred and regardless of whether the employee was on duty or not. I think the motivation for the legislature in so providing for this additional circumstance of coverage was its recognition of the fact that law enforcement personnel are subject to the vindictive retaliation of those they investigate, arrest or prosecute at any time and not simply when such law enforcement personnel are engaged in "on duty" activities.