A09A0115. MCKELVEY v. GEORGIA JUDICIAL RETIREMENT SYSTEM.

(678 SE2d 120)

PHIPPS, Judge.

Through a complex statutory scheme, the Georgia Judicial Retirement System (JRS) bases retirement contributions and ben-

---

efits on a member's "salary,"[1] which is defined as the member's "average earnable monthly compensation,"[2] which is in turn defined as the "full rate of regular monthly compensation payable to a member employee for his or her full working time."[3] The question this case presents is whether, in administering the retirement statutes, the JRS is authorized to interpret the term "salary," as so defined, as including only the compensation paid a state court solicitor-general for services rendered, and as excluding sums paid to him as reimbursement for administrative expenses incurred by him in the discharge of his duties as well as sums paid to provide him with benefits such as health and dental insurance. For reasons that follow, we answer this question in the affirmative as did the trial court. We thus affirm the judgment appealed.

## Preliminary Facts

Howard McKelvey was the Solicitor-General of the State Court of Sumter County for over 17 years. After becoming eligible to receive retirement benefits, McKelvey brought this suit against the JRS complaining of its allegedly wrongful action in refusing to pay him the $4,254.77 monthly retirement benefit to which he claims entitlement. The JRS answered the complaint and asserted that McKelvey is entitled to a retirement benefit payment of only $2,023.56 per month. On cross-motions for summary judgment, the trial court awarded summary judgment to the JRS and denied summary judgment to McKelvey.

## Statutory Scheme

The JRS was created and is governed by Chapter 23 of Title 47 of the Official Code of Georgia. The JRS is administered by a Board of Trustees.[4] All funds received by the Board are deposited into a fund from which all retirement benefits are paid.[5] Members of the JRS include solicitors-general of state courts.[6]

OCGA § 47-23-81 (a) states that employer and employee contributions to the JRS retirement fund with respect to a solicitor-general of a state court are based on a solicitor-general's "actual earnable

---

[1] OCGA §§ 47-23-100 (a) (3); 47-23-102.

[2] OCGA § 47-23-1 (1); see also OCGA § 47-23-81 (a).

[3] OCGA § 47-23-1 (9).

[4] OCGA § 47-23-20 (a).

[5] OCGA § 47-23-22 (a).

[6] OCGA § 47-23-41 (a) (effective July 1, 1998); see also OCGA § 47-23-40 (any person who on June 30, 1998, was member of predecessor retirement system shall be transferred to JRS effective July 1, 1998).

monthly compensation." For a solicitor-general of state courts, OCGA § 47-23-81 (b) (1) sets employee contributions to the fund at $7^1/_2$ percent of his or her "earnable monthly compensation." Employer contributions must also be made in an amount determined by the JRS Board of Trustees. Under OCGA § 47-23-102, any JRS member retiring on or after July 1, 1996, with 16 years or more of creditable service, is entitled to receive a benefit equal to 66.66 percent, plus 1 percent for each year of creditable service over 16 years, of "the member's salary." For a solicitor-general of a state court, OCGA § 47-23-100 (a) (3) defines "salary" as "the average earnable monthly compensation" received by the solicitor-general. OCGA § 47-23-1 (1) in turn defines the term "average earnable monthly compensation" as "the average earnable monthly compensation of a member during the 24 consecutive months of creditable service producing the highest such average." OCGA § 47-23-1 (9) in turn defines "earnable monthly compensation" as "the full rate of regular monthly compensation payable to a member employee for his or her full working time. . . ."

### Stipulated and other Undisputed Facts

McKelvey served as Solicitor-General of the State Court of Sumter County from September 1, 1989, until January 1, 2007. His creditable service is thus seventeen years and four months. Under OCGA § 47-23-102, he is entitled to receive retirement benefits in an amount equal to 67.99 percent of his "salary" beginning June 1, 2007.

At all relevant times, McKelvey also owned and operated a private law practice wherein he incurred overhead expenses for office space, staff, equipment, and supplies. Because Sumter County did not provide its state court solicitor-general with any of these, McKelvey used his private law office facilities for these purposes, and the county reimbursed him a sum of money each month for "administrative expenses" (totaling $20,900 in 2005 and again in 2006) incurred by him and allocated to the discharge of his duties as solicitor-general. The county also paid him a monthly sum, referred to as "wages" (totaling $35,040 in 2005 and $35,050 in 2006) as compensation for his services. And the county provided him with various "benefits," such as health insurance, dental insurance, contributions to the retirement fund, and contributions to a defined benefits plan (such benefits totaling $6,412 in 2005 and $7,866 in 2006). The county reported McKelvey's "wages" to the Internal Revenue Service (IRS) as employee wages on a W-2 Form. The county reported sums paid McKelvey as reimbursement for "administrative expenses" on a 1099 Form (a form commonly used to report

nonemployment income). It does not appear that the county reported sums paid to provide McKelvey with benefits as any sort of income to him.

When calculating and making the employer and employee contributions to McKelvey's retirement account, the county utilized only the "wages" component of his compensation. Both McKelvey's and the county's contributions to the JRS retirement fund would have been higher in order to fund his pension benefits, if his salary had included components of his compensation referred to as "administrative expenses" or "benefits." In September 2004, McKelvey sent a letter to the Sumter County Board of Commissioners complaining of the county's failure to base contributions to his JRS retirement fund on all three components of his compensation, requesting that future contributions be recalculated accordingly, and offering to deliver funds to the county to repair the then existing deficit in his retirement account.

The JRS construes the definition of "salary" under OCGA § 47-23-100 (a) (3) and the definition of "average monthly employment" under OCGA § 47-23-1 to include only the "wages" reported to JRS by Sumter County, and not the "administrative expenses" or "benefits." Calculated based only on McKelvey's wages reported over the relevant 24-month period, his "average earnable monthly compensation" would have been $2,976.13, thereby entitling him to a monthly retirement benefit of $2,023.56. If, however, the word "compensation," as defined in OCGA §§ 47-23-100 (a) (3) and 47-23-1 (1), included "wages," "administrative expenses," and "benefits," his "average monthly compensation" would have been $6,256.58, resulting in a monthly benefit of $4,254.77. In March 2007, McKelvey demanded that the JRS pay him a monthly retirement benefit of $4,254.77 based on "average earnable monthly compensation" of $6,256.58. Instead, the JRS has paid McKelvey benefits based on an "average earnable monthly compensation" of $2,976.13, for a monthly benefit of $2,023.56.

## Appeal

On appeal, McKelvey argues that the plain and ordinary meaning of the term "compensation" includes all remuneration for services rendered, whether it be hourly or salaried compensation for work performed, reimbursement for work-related expenses, or the provision of fringe benefits. McKelvey also relies on cases such as *City of Macon v. Herrington*,[7] *Bd. of Trustees &c. v. Mabry*,[8] and *City*

---

[7] 198 Ga. 576, 589-590 (2) (32 SE2d 517) (1944).
[8] 221 Ga. App. 762, 763-765 (472 SE2d 542) (1996).

*Council of Augusta v. Wilhelm*[9] for the proposition that pension laws should be liberally construed in favor of employees.

We do not disagree with McKelvey that, in general parlance, the term "compensation" is broadly understood to include all remuneration for services rendered. Under statutes governing the JRS, however, retirement benefits are based on a percentage of a member's "salary," which is defined as the full rate of regular compensation for full working time. The JRS was certainly authorized to exclude from this definition sums paid to an employee as reimbursement for administrative expenses that the employer would otherwise have incurred. And in our opinion the JRS also had the administrative authority to decide that fringe benefits of employment, not reported to the IRS as income to the employee, do not constitute part of regular compensation for working time.

Although cases such as *Herrington*, *Mabry*, and *Wilhelm* do hold that courts should liberally construe pension laws, cases such as *Hosp. Auth. of Gwinnett County v. State Health Planning Agency*[10] hold that "[t]he interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference." Even though the JRS might have construed OCGA § 47-23-1 (9) and related Code sections in the broader manner suggested by McKelvey, its more restrictive interpretation finds support in the language of the statutes. The statutes, as so interpreted, thus became part of McKelvey's contract of employment,[11] and he obtained a vested contractual right in the plan in consideration of his performance of services.[12] Although the constitutional prohibition against impairment of contracts would preclude the application of an amendment to the statutes the effect of which would be to reduce the calculation of McKelvey's monthly retirement benefit,[13] McKelvey is demanding that the JRS amend its interpretation of the statutes to pay him a monthly retirement benefit to which his and his employer's contributions through the years do not entitle him. Unlike the situations in *Herrington*, *Mabry*, and *Wilhelm*, the administrator's interpretation and application of the retirement plan law is not contradicted by the undisputed evidence or by the law's plain language and purpose in this case.[14]

---

[9] 111 Ga. App. 234, 235-236 (141 SE2d 220) (1965).

[10] 211 Ga. App. 407, 408 (2) (438 SE2d 912) (1993) (citations omitted).

[11] See generally *Withers v. Register*, 246 Ga. 158, 159 (1) (269 SE2d 431) (1980).

[12] *Malcom v. Newton County*, 244 Ga. App. 464, 468 (4) (535 SE2d 824) (2000).

[13] *Withers*, supra.

[14] In *Herrington*, the city of Macon refused to pay pension benefits to a fireman's widow on the ground that the fireman was an inactive, pensioned member of the fire department on

Under these circumstances, we find no error in the trial court's award of summary judgment to the JRS and in its denial of summary judgment to McKelvey.

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED APRIL 30, 2009 ■■■■■■■■

*Vincent D. Sowerby*, for appellant.

*Thurbert E. Baker, Attorney General, Annette M. Cowart, Senior Assistant Attorney General, Christopher A. McGraw, Assistant Attorney General*, for appellee.

---

sick leave at the time of his death. *Herrington* held that the city acted wrongfully, because the undisputed evidence showed that the fireman had not become a pensioned member of the fire department and, under the city's pension act, neither his inactive status nor the fact that he was on sick leave divested either him or his widow of the right to receive a pension.

In *Mabry*, a county refused to allow a member of its personnel board to participate in the county's retirement system on the ground that he was not a county employee. We upheld the trial court's invalidation of the county's action, because the evidence indisputably showed that the board member was a county employee.

In *Wilhelm*, a city sought to decrease a police detective's pension by downgrading his job classification after his retirement. *Wilhelm* held that allowing the city to do that would have required the court to ignore the plain and unambiguous language of the pension act, which provided for pension escalations but not reductions, and would have done violence to its purpose.