STEWART *v.* ATLANTA BEEF CO. STEWART *v.* ARMOUR PACKING CO. STEWART *v.* NELSON MORRIS & CO.

1. In the general tax act approved December 26th, 1890, the 22d clause of the 2d section is in these words: "Upon all packing houses doing a cold storage business in this State, whether carried on by the owners thereof, or by their agents, five hundred dollars in each county where said business is carried on." *Held,* that a packing house which uses cold storage for preserving its own commodities alone, and does not receive and store for the public, or any part thereof, is not "doing a cold storage business" within the meaning of this clause, and therefore is not subject to the imposed tax.

2. Neither the evidence of a member of the legislature which passed the act, nor that of the comptroller-general, touching the meaning and purpose of the same, was admissible to aid in construing the statute and arriving at the legislative intent. Other rulings complained of as to the rejection and the admission of evidence were immaterial to the substantial legal merits of the case, in view of the uncontested facts and of the correct construction of the law, as above announced.

3. A tax-collector who, by issuing an execution for taxes against one not engaged in the business on which the tax in question has been imposed, coerces, through a levy by the sheriff, the payment of such tax, together with the cost of collection, is personally liable in an action brought against him for such wrong-doing by the party so coerced, and the recovery may extend to the whole amount paid to the sheriff, irrespective of whether it reached the

collector's hands or not.   In the verdict and judgment the description of the defendant " as tax-collector" will not vitiate, the words quoted being merely descriptive of the person, and having no legal effect otherwise.

October 30, 1893.

Action for. damages.   Before Judge VAN EPPS.   City court of Atlanta.   March term, 1893.

The Atlanta Beef Company by its petition alleged : It is a partnership composed of certain citizens of Illinois and Missouri, doing business in Atlanta and elsewhere in Georgia, and doing no other business in Georgia except to sell dressed meats.   As a necessary part of its business and as a necessary means for carrying on the same, it has a place in Atlanta where its fresh meats are put and temporarily held for sale.   When shipments of fresh meats from other States to Georgia began, the meats came into Georgia to the place of sale in refrigerator cars and were sold directly from such cars to local butchers and consumers.   When the business increased it became necessary to unload the cars into storehouses containing refrigerators, to keep the meats cool to avoid spoiling.   Plaintiff leased a store in Atlanta in which to keep its fresh meats shipped from Illinois for sale in Atlanta and contiguous territory, and since then has done the business of selling such meats at that store.   It has not engaged in any other business in Georgia, and said products have been kept only for preservation temporarily, and for as short a time as possible, while its goods were for sale.   It has never done any storage business in Georgia of any character.   There is not nor has there ever been any packing house doing a cold storage business in this State.   Plaintiff never was a packing house in Georgia nor a packing house doing a cold storage business in Georgia, but has ever been only a seller of fresh meats and products thereof sent from Illinois to Georgia in regular interstate commerce, of all

which the tax-collector of Fulton county, A. P. Stewart, had due notice. A storage business is storing the goods of others for compensation, and cold storage is storing such goods for compensation in receptacles or rooms kept cold to preserve them, and such was the meaning of the words when the general tax act of 1890 was passed. On January 28, 1891, said Stewart issued a *fi. fa.* against plaintiff for $500, for alleged special tax for 1891, and interest thereon from January 1, 1891, and costs, falsely alleging in the *fi. fa.* that plaintiff had a packing house doing a cold storage business in Fulton county; and delivered the *fi. fa.* to the sheriff of the county with orders to collect it. The sheriff thereupon seized certain described property of plaintiff over its protest, to sell to pay the *fi. fa.* Plaintiff needed all of this property to carry on its business, but was compelled to give bond for its forthcoming. It was advertised for sale and plaintiff did all it could to prevent the sale, but could not, because no judicial interference could be had with a tax sale. Under compulsion it paid the sheriff $536.20 on May 27, 1891, in full of the *fi. fa.*, principal, interest and costs, of which $514.70 was paid to said Stewart, tax-collector. The declaration then set forth a similar course as to a *fi. fa.* for 1892, and payment by plaintiff of $507.32 to the sheriff, of which $503.32 was paid to Stewart. No demand has been made of any one for such tax of $500, except of plaintiff, Nelson Morris & Company and the Armour Packing Company, which two latter also are engaged in the sale of beef sent to this market from other States, though there are many other persons in Atlanta and Georgia so selling fresh meats. Said tax-collector claims that none are liable for the tax, except said three companies dealing in western beef. Efforts have been made to levy taxes from, or put burdens on, sellers of western beef, which would not be borne by citizens of Georgia selling beeves

raised in Georgia; but such efforts have heretofore not been put in statutes. The section in question of the tax act of 1890 was intended solely to accomplish that purpose. In the issuing of the *fi. fa.* and levy thereof, the tax-collector and sheriff, while claiming to act as officers of Georgia in pursuance of law, were acting without authority of law, and in his conduct said Stewart did not represent the State of Georgia in discharging duties imposed upon him by its constitution or the constitution of the United States or laws in pursuance thereof. Under the facts aforesaid, plaintiff owed no such taxes for 1891 and 1892, as in the *fi. fa.* described, nor under said tax act. The declaration made other allegations not material here, relating to the unconstitutionality of the tax in question. Damages for the alleged trespass were laid at $5,000, and process was prayed against " said Stewart, tax-collector."

1. The court charged the jury thus: "In view of the evidence, I charge you, gentlemen, that these plaintiffs had the same right that any other citizens of this State had to take ordinary precaution for the preservation of their merchandise until they sold it. If it suited their fancy, or the exigency of the business which they carried on required, that they should have cool receptacles in which to keep their meat in a state of preservation until they sold it, they had a perfect right to keep their meat in this way, and by so doing they did not become amenable to the tax for doing a cold storage business in this State. The evidence is undisputed that there is a well recognized business known as cold storage business. It is as specific and identic as the business of a physician or a lawyer. The evidence is undisputed that other persons engaged in that business provide facilities for cold storage for perishable articles such as meat, and charge a fee or reward for their care and custody by that means of warehousing. The words of this statute that I shall

now read are to be construed in their ordinary signifi-
cation. The legislature in 1890 passed an act which,
by the 22d subdivision of the 2d section, declares or
levies upon all packing houses doing a cold storage busi-
ness in this State, whether carried on by the owners
thereof or by their agents, $500 in each county where
said business is carried on. These words, doing a cold
storage business, are to be interpreted according to their
ordinary signification as used in the act; and the evi-
dence is undisputed that there is a well recognized busi-
ness known among merchants as a cold storage business,
and the essential ingredient of that business is that the
persons engaged in it take goods on storage for the pub-
lic, charging a reward for keeping them. The legisla-
ture must be construed to have intended that business,
and not to have intended to levy a tax of $500 upon a
non-resident who was authorized to transact business in
this State, selling his merchandise, who merely provided
facilities in the way of cold storage for taking care of
his own goods until he could dispose of them. That
being the view which the court entertains of the law of
this case, and the facts being undisputed, I direct a ver-
dict." These instructions are assigned as error.

2. Defendant offered to prove by the comptroller-
general, "as a part of the history of the passage of this
act, that it was intended by the legislature to lay a tax
of $500 upon all packing houses doing a cold storage
business in this county and others, whether carried on
by a citizen of this State or by a non-resident hereof; and
that the act meant by its words such parties as are a pack-
ing house in or out of this State, who bring their meats
here and put them in their cold storage rooms as they
have described in plaintiffs' evidence as theirs, and keep
them there in a state of preservation by ice until they
find a purchaser, and offer them for sale and sell them;
and that this act was intended to tax that class of people

or business." This was disallowed; and defendant then offered "to prove by Col. Martin, a member of the legislature at that time, the history of the act," and "to prove the same things by Col. Martin that he offered to prove by the comptroller-general." This also was rejected, and errors are assigned on each ruling.

3. The jury found for the plaintiff, "against said Andrew P. Stewart as tax-collector of said Fulton county," $1,043.52, the aggregate of the sums paid by plaintiff on the *fi. fas.* when and as specified in the declaration, with costs of this suit. The motion for a new trial alleges that this verdict was illegal, because the pleadings and evidence showed that defendant received only $1,018.02, the balance upon collection having been retained by the sheriff as his cost; and because the verdict, if for plaintiff, should have been against Stewart, and not against him as tax-collector, the plaintiff not being entitled to recover of him as an official.

John W. Cox, for plaintiff in error.
N. J. & T. A. Hammond, *contra.*

Lumpkin, Justice.

These three cases involve the same questions. The facts are stated by the reporter.

1. The obvious meaning of the phrase " doing a cold storage business" is, carrying on the business of storing commodities in a cool place, for hire or reward. It would certainly not be contended that one who, for his own comfort or convenience, kept fruits, meats, or other perishable goods, in a refrigerator, box, or room cooled artificially, would be carrying on a cold storage business. It would make no difference in principle if a person engaged in the sale of such articles kept them, for the purpose of preservation until sold, in such a room or other place. The real business thus conducted would be that of a dealer in such commodities, and the method em-

ployed for storing and preserving them would be a mere incident to that business. The business of storing for hire the goods of other people is of an entirely distinct character. The difference between the two classes of business indicated is very plain; and the proposition that a dealer in goods of any kind, who merely uses a cold storage receptacle for preserving his wares until sold, is not engaged in carrying on a cold storage business, is so manifestly beyond contention that, to our minds, it does not admit of elaboration or discussion; and it is entirely immaterial what may be the size of the receptacle, room or other place in which the goods are stored. We therefore are fully satisfied that the defendants in error were not liable to the tax imposed by the clause quoted, in the 1st head-note, from the general tax act passed in 1890, it appearing beyond dispute from the evidence that these parties used the cold storage process for no other purpose than to preserve their own commodities, and that they did not receive or store, for hire or otherwise, any goods whatever for other persons.

2. While the opinion of a member of the legislature which passed an act, or that of the comptroller-general, as to its meaning and purpose, might possibly often be valuable and instructive in construing the act and arriving at the legislative intent, it cannot be seriously contended that courts can properly resort to sources of this kind in ascertaining the legislative will as expressed in a statute. These gentlemen might differ as to what an act did mean, which would only increase, rather than relieve, any difficulty a court might have in construing the law. But aside from this, which is only thrown out as a suggestion in passing, this method of arriving at the meaning of a public statute, cannot, after careful reflection, receive the sanction of any fair mind.

The motion for a new trial complains of various rulings made by the court in rejecting and in admitting evidence. It is unnecessary to state or discuss them more in detail, as they could have had no effect whatsoever upon the proper determination of the cases now under review. The correct result was undoubtedly reached, and it is therefore immaterial whether, in the rulings referred to, the court did or did not err.

3. In view of the construction this court has placed upon the clause of the general tax act in question, the tax-collector had no legal authority to issue the executions against the defendants in error, or have the same levied by the sheriff, and thus compel the payment of the taxes to which he supposed they were liable. What he did, and caused the sheriff to do, was entirely unlawful; and his conduct as to these defendants was therefore that of a mere wrong-doer or trespasser. Accordingly, he is personally liable to them, not only for the money collected by the sheriff as taxes on these void executions, but also for the costs of collection which that officer exacted. A tax-collector has no authority, *colore officii*, to deprive any citizen of his money or his property unless expressly so authorized to do by law; and he will not be protected, though apparently proceeding under the forms of law, when there is no law to authorize or justify his action.

The verdicts and judgments rendered in the cases before us are valid and binding upon Stewart individually. The words " as tax-collector " following his name neither vitiate these verdicts and judgments, nor render them applicable to the defendant only in his official capacity. These words are merely descriptive of the person, and otherwise they have no legal effect whatever.

*Judgment affirmed.*