A02A1836. ALBANY SURGICAL, P.C. v. DEPARTMENT OF
COMMUNITY HEALTH.
(572 SE2d 638)

ELDRIDGE, Judge.
This is an appeal from the grant of summary judgment for the Department of Community Health, Division of Health Planning, in a declaratory judgment action brought by Albany Surgical, P.C. seeking to declare invalid Ga. Comp. R. & Regs. Rules 272-2-.01 (19) (h) 3 and 272-2-.09 (1) (b) 10 ("DHP Rule"), which provides that an ambulatory surgery center engaged only in the practice of "general surgery" does not qualify for the single specialty exemption for the Certificate of Need ("CON"). In its trial brief in opposition to such motion, Albany Surgical raised for the first time Georgia constitutional issues, which the trial court did not pass upon. In transferring this appeal to this Court, the Supreme Court held: "[a]s the issue on appeal concerns the validity of an administrative regulation adopted by the defendants and does not appear that the trial court ruled on any constitutional issues, this Court does not have jurisdiction over the appeal and it is hereby transferred to the Court of Appeals." Finding no merit to the legal issues before us, we affirm and remand to the trial court for determination of the constitutional issues raised but not ruled upon by the trial court and such other pending motions as remain relevant to the determination of such constitutional issues.

The General Assembly passed and later amended the Certificate of Need Act to create a system for planning new health service institutions to avoid costly duplication of services where insufficient need existed. OCGA § 31-6-2 et seq. The legislative intent expressed in the Act is:

The policy of this state and the purposes of this chapter are to ensure that adequate health care services and facilities are developed in an orderly and economical manner and are made available to all citizens and that only those health care services found to be in the public interest shall be provided in this state. To achieve this public policy and purpose, it is essential that appropriate health planning activities be undertaken and implemented and that a system of man-

datory review of new institutional health services be provided. Health care services and facilities should be provided in a manner that avoids unnecessary duplication of services, that is cost effective, and that is compatible with the health care needs of the various areas and populations of the state.

Ga. L. 1983, p. 1566, § 1 (OCGA § 31-6-1). Before commencing operations with a new health care service within DHP's jurisdiction, the provider must apply to and obtain permission through the grant of a CON unless exempted. OCGA §§ 31-6-40 (b); 31-6-42; 31-6-43. The physician-owned single-specialty surgery centers have exemption from obtaining a CON. See OCGA § 31-6-2 (14) (G) (iii).

Albany Surgical consists of five general surgeons in private practice in Albany. Albany Surgical contends that general surgery is a single specialty, a term of art, entitled to exemption and is not a multi-specialty as defined in the regulations promulgated by DHP Rule 272-2-.09 (1) (b) 10. Under DHP Rule 272-2-.01 (19) (h) 3, it provides that an ambulatory surgery center engaged in the practice of a single specialty and having a total capital expenditure of less than $1 million for construction, development, and other establishment does qualify for the exemption from a CON. Albany Surgical contends such regulations are inconsistent with OCGA § 31-6-2 (14) (G) (iii), and thus, are invalid.

Both DHP Rules 272-2-.01 (19) (h) 3 and 272-2-.09 (1) (b) 10 were released for public comment, hearing, and legislative objection under OCGA §§ 31-6-21.1 and 50-13-4, and no comment or legislative objection was made to either regulation as then proposed.

The Georgia Alliance of Community Hospitals, Inc. was allowed to intervene, because, if a general surgery practice was permitted exemption from a CON, then surgeons would set up many ambulatory surgical centers that would duplicate hospital surgical suites, taking away centers of profit by paying patients and leaving indigent surgical patients to the hospitals. See OCGA § 31-6-1.

1. Albany Surgical contends that the trial court erred in granting DHP's motion for summary judgment and denying its motion, because DHP Rule 272-2-.09 (1) (b) 10 is not authorized under the plain language of OCGA § 31-6-2 (14) (G) (iii). We do not agree.

The test for the validity of administrative regulations is based upon a two-part analysis: (1) is the regulation authorized by statute; and (2) is the regulation reasonable? *Ga. Real Estate Comm. v. Accelerated Courses in Real Estate*, 234 Ga. 30, 32 (2) (214 SE2d 495) (1975); *TEC America v. DeKalb County Bd. of Tax Assessors*, 170 Ga. App. 533, 536 (1) (317 SE2d 637) (1984).

(a) The authority of DHP to promulgate regulations in implementing CON was delegated under OCGA § 31-6-21 (b) (4), which

grants such power, and both DHP Rules 272-2-.01 (19) (h) 3 and 272-2-.09 (1) (b) 10 were properly promulgated. Such broad delegation of rule-making authority is sufficient to permit the promulgation of regulations defining what is or is not a single specialty within the CON process under OCGA § 31-6-2 (14) (G) (iii).

All duly enacted regulations carry a presumption of validity. *Quattlebaum v. Ga. Power Co.*, 165 Ga. App. 510 (1) (301 SE2d 677) (1983). Courts should defer to the agency in matters involving the interpretation of the statutes which it is empowered to enforce. *Blue Cross &c. of Ga. v. Deal*, 244 Ga. App. 700, 703-704 (1) (536 SE2d 590) (2000); *Commr. of Ins. v. Stryker*, 218 Ga. App. 716, 717 (1) (463 SE2d 163) (1995); *Hosp. Auth. of Gwinnett County v. State Health Planning Agency*, 211 Ga. App. 407, 408 (2) (438 SE2d 912) (1993). The courts give great deference to executive agencies' policy decisions, because executive agencies provide a "high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches" that enables such agencies to "make rules and enforce them in fashioning solutions to very complex problems." *Bentley v. Chastain*, 242 Ga. 348, 350-351 (1) (249 SE2d 38) (1978). Such is the practical application of the separation of powers doctrine between the executive and judicial branches inherent in the Georgia Constitution. Id. at 352. Such judicial deference ends only when the executive branch agency's action is contrary to the plain language of the statute empowering such agency to act by the General Assembly. *Sawnee Elec. Membership Corp. v. Ga. Public Svc. Comm.*, 273 Ga. 702, 705-706 (544 SE2d 158) (2001). "Therefore, the only review authorized is that inherent in the power of the judiciary: Whether the agency acted beyond [its discretion], or acted arbitrarily or capriciously with regard to an individual's constitutional rights." *Bentley v. Chastain*, supra at 352.

DHP has been limited by the General Assembly in exempting any provider from CON review except where the legislature has clearly and expressly provided exceptions, and the courts have consistently held that DHP lacks authority to expand or create new exceptions. See *North Fulton Med. Center v. Stephenson*, 269 Ga. 540, 543-544 (501 SE2d 798) (1998); *Phoebe Putney Mem. Hosp. v. Roach*, 267 Ga. 619, 620-621 (1) (480 SE2d 595) (1997); *North Fulton Med. Center v. Roach*, 263 Ga. 814 (1) (440 SE2d 18) (1994); *HCA Health Svcs. v. Roach*, 263 Ga. 798, 800-801 (3) (439 SE2d 494) (1994). "All doubts should be resolved in favor of the general statutory rule, rather than in favor of the exemption." *Sawnee Elec. Membership Corp. v. Ga. Public Svc. Comm.*, supra at 704.

When the General Assembly passed OCGA § 31-6-2 (14) (G) (iii), it was presumed that it was "enacted by the legislature with full

knowledge of the existing condition of the law with reference to it." (Punctuation omitted.) *Allison v. Domain*, 158 Ga. App. 542, 544 (281 SE2d 299) (1981). Thus, when the "single specialty exemption" was enacted in 1991 in Ga. L. 1991, p. 1871, DHP had in existence a regulation which excluded "general surgery" from the definition of "limited purpose ambulatory surgery program," which was the equivalent of "single specialty." See former DHP Rules 272-2-.09 (1) (a) (7) and (b) (8) (111). Therefore, the legislature did not intend to include "general surgery" as a "single specialty" or "limited purpose" within the meaning of the "single specialty exemption." See generally *Mason v. Svc. Loan &c. Co.*, 128 Ga. App. 828, 832 (3) (198 SE2d 391) (1973).

Further, when promulgating its regulations, DHP must send all proposed regulations to legislative counsel, who, in turn, sends the proposed regulations to the legislative committees and members with oversight. OCGA § 31-6-21.1 (b). If there is no objection to the proposed regulation from any legislator within 30 days of the distribution, then DHP can adopt the proposed regulation. In 1998, when the multi-specialty rule was submitted to the General Assembly, no objection by any legislator was made to either DHP Rule 272-2-.01 (19) (h) 3 or 272-2-.09 (1) (b) 10, which are read together. Such acquiescence by the General Assembly is evidence that such regulation came within the intent of the legislature in enacting OCGA § 31-6-2 (14) (G) (iii). See OCGA § 31-6-21.1 (b); *United States v. Rutherford*, 442 U. S. 544, 554, n. 10 (99 SC 2470, 61 LE2d 68) (1979) (when the agency interpretation has been brought to the attention of the legislature, and the legislature does not act to correct it, then courts should presume that the legislative intent has been correctly discerned by the agency). Thus, DHP Rules 272-2-.01 (19) (h) 3 and 272-2-.09 (1) (b) 10 must be presumed to correctly express the legislative intent.

Albany Surgical argues that "specialty" should be interpreted by OCGA § 1-3-1 (b), according to the "significance attached to [specialty] by experts," i.e., to the dictates of the American Board of Medical Specialties. Where executive agencies have rule-making powers delegated by the General Assembly, OCGA § 1-3-1 (b) must yield to other rules of statutory construction.

> The cardinal rule of statutory construction is first, to ascertain the legislative intent and purpose in enacting the law and then to give it that construction which will effectuate the legislative intent and purpose. We also recognize that legislative exceptions in statutes are to be strictly construed and should be applied only so far as their language fairly

warrants. All doubts should be resolved in favor of the general statutory rule, rather than in favor of the exemption.

(Citations and punctuation omitted.) *Sawnee Elec. Membership Corp. v. Ga. Public Svc. Comm.*, supra at 704. Thus, the intent of the General Assembly for a CON differs from the intent of the American Board of Medical Specialties in drafting its definition.

(b) The judicial review of the reasonableness of a regulation under the second prong analysis is limited, because the regulation must be upheld if the agency presents any evidence to support the regulation, although contrary evidence is admitted by the challenging party. The evaluation of reasonableness of an agency regulation must begin with the purpose of the statute delegating the regulatory authority to determine if the regulation furthers such purpose. *Ga. Real Estate Comm. v. Accelerated Courses*, supra at 36 (3). "Although it is the function of the courts to evaluate the reasonableness of an agency rule, such evaluation . . . should credit the relevant evidence offered to support the reasonableness of the rule." Id. Thus, both DHP Rules 272-2-.01 (19) (h) 3 and 272-2-.09 (1) (b) 10 are reasonable. The regulation of health care professionals is: "closely related to the public interest. . . . [T]he State in the exercise of the inherent police power of the sovereign may place such restrictions on a licensee as may be necessary for the welfare and safety of society. . . . The test of reasonableness is the impact upon the [regulated person] and the public." (Citations and punctuation omitted.) *Baranan v. State Bd. of Nursing Home Administrators*, 143 Ga. App. 605, 606-607 (1) (239 SE2d 533) (1977).

General surgery reaches a wider patient pool than other specialties and overlaps numerous other surgical specialties. Since the purpose of a CON is to avoid duplication of medical services, then the regulation serves such purpose, avoiding underutilized surgical suites by allowing the proliferation of competing ambulatory surgical centers. OCGA § 31-6-1. Thus, it is for the regulating agency to determine by its expertise where the overlap does not warrant exemption by regulation. *Bentley v. Chastain*, supra at 350-351. Therefore, the agency by regulation can address the problem selectively. *Farley v. State*, 272 Ga. 432, 433-434 (531 SE2d 100) (2000); *Price v. Lithonia Lighting Co.*, 256 Ga. 49, 52 (3) (343 SE2d 688) (1986). Such regulatory distinctions are not unreasonable and are permissible, as in this case. *Mason v. Svc. Loan &c. Co.*, supra at 831.

2. Albany Surgical contends that the trial court erred in construing OCGA § 31-6-21.1 as providing legislative approval for DHP Rule 272-2-.09 (1) (b) 10 because it violates the Georgia Constitution's separation of powers provision. The Supreme Court has found that the trial court has not ruled upon such issue.

3. Albany Surgical contends that the trial court erred in granting DHP's motion for summary judgment and in denying its motion on the issue of reasonableness of DHP Rule 272-2-.09 (1) (b) 10. This enumeration of error is governed by Division 1 (b) determining that the regulations are reasonable.

4. Albany Surgical contends that the trial court erred in failing to grant its motion to compel discovery from the Intervenor to its discovery requests. We do not agree.

Albany Surgical has shown no prejudice by the failure to compel so that the outcome would have been affected. It had the burden to show the ruling to be erroneous and harmful. *In the Interest of J. E. E.*, 228 Ga. App. 831, 833 (1) (493 SE2d 34) (1997). On remand the trial court can rule on this motion.

5. Albany Surgical contends that the trial court erred in failing to grant its motion to strike the affidavit of Pamela Stephenson. We do not agree.

The trial court did not expressly rule on this motion nor cite to the affidavit for the Intervenor in its order.

No one, not even a legislator, is competent to testify concerning the legislative intent or motive in passage of the Certificate of Need Act in general or the 1991 amendment. See *Fulton County v. Dangerfield*, 260 Ga. 665, 666-667 (1) (398 SE2d 14) (1990); *Jackson v. Delk*, 257 Ga. 541, 543 (2) (361 SE2d 370) (1987); *Stewart v. Atlanta Beef Co.*, 93 Ga. 12, 16-17 (2) (18 SE 981) (1893); *Southern R. Co. v. A. O. Smith Corp.*, 134 Ga. App. 219, 221 (2) (213 SE2d 903) (1975). Further, matters of law are not a proper subject of expert testimony. See *Dow Chem. Co. v. Ogletree, Deakins, Nash, Smoak &c.*, 237 Ga. App. 27, 30 (2) (514 SE2d 836) (1999).

Unless the judgment shows on its face that the trial court relied upon inadmissible evidence in reaching the judgment, the trial court is presumed to have followed the law and relied only upon admissible evidence in reaching its decision. *Brandenburg v. All-Fleet Refinishing*, 252 Ga. App. 40, 42 (1) (555 SE2d 508) (2001); *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 24-25 (485 SE2d 563) (1997). Further, in the absence of the trial court's ruling on the motion to strike, there is nothing for this Court to review. *Mountain Bound v. Alliant FoodService*, 242 Ga. App. 557, 560 (3) (530 SE2d 272) (2000). On remand the trial court can rule on this motion.

*Judgment affirmed and remanded with directions. Smith, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 27, 2002 — 

*Phears & Moldovan, Victor L. Moldovan*, for appellant.

*Thurbert E. Baker, Attorney General, Robert S. Bomar, Deputy Attorney General, Harold D. Melton, Senior Assistant Attorney General, Sidney R. Barrett, Jr., Assistant Attorney General, Perry & Walters, James E. Reynolds, Jr., Parker, Hudson, Rainer & Dobbs, John H. Parker, Jr., Thomas D. Watry,* for appellee.

*Bondurant, Mixson & Elmore, Michael B. Terry, Corey F. Hirokawa, Vicky O. Kimbrell, Lisa J. Krisher, Phyllis J. Holmen,* amici curiae.