**FIRST DIVISION**
**PHIPPS, C. J.,**
**DOYLE, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 30, 2015**

# In the Court of Appeals of Georgia

A15A0042, A15A1610. GARY BLACK, IN HIS OFFICIAL B O - 0 0 2 , CAPACITY AS GEORGIA COMMISSIONER OF 080 AGRICULTURE v. BLAND FARMS, LLC.

BOGGS, Judge.

In Case No. A15A0042, Gary Black, in his official capacity as the Georgia Commissioner of Agriculture ("the Commissioner"), appeals from a trial court ruling declaring a new Vidalia onion packing regulation invalid. The Commissioner contends that the plaintiff, Bland Farms, LLC, did not demonstrate that it had standing to bring the action, and that the new regulation was a valid one. For the following reasons, we agree with the trial court that Bland Farms has standing to bring a declaratory judgment action, but hold that the packing regulation was a valid exercise of the Commissioner's authority pursuant to the Vidalia Onion Act, OCGA

§ 2-14-130 et. seq. We therefore affirm in part and reverse in part in Case No. A15A0042. Case No. A15A1610 is dismissed as moot.[1]

In 1986, the Georgia General Assembly enacted the Vidalia Onion Act. OCGA § 2-14-130. Use of the term "Vidalia" is prescribed by OCGA § 2-14-132:

> Only onions which are of the Vidalia onion variety and which are grown within the Vidalia onion production area may be identified, classified, packaged, labeled, or otherwise designated for sale inside or outside this state as Vidalia onions. The term "Vidalia" may be used in connection with the labeling, packaging, classifying, or identifying of onions for sale inside or outside this state only if the onions are of the Vidalia onion variety and are grown in the Vidalia onion production area.

"In 1990, the State of Georgia, through the Department of Agriculture, applied for the U. S. certification mark 'Vidalia®,' and the mark was registered with the U. S. Patent and Trademark Office on August 19, 1992." In 2000, the legislature amended the Vidalia Onion Act to provide that "[t]he Commissioner of Agriculture is authorized to take all actions necessary and appropriate" to promote and protect that trademark

---

[1]In Case. No. A15A1610, the Commissioner appeals from a ruling of the trial court clarifying that the final order in A15A0042 "clearly granted the injunction, and thus [the Commissioner is] prohibited from enforcing" the new packing regulation. Because we conclude in Case No. A15A0042 that the trial court erred in ruling that the packing rule was invalid, Case No. A15A1610 is rendered moot.

"for use on or in connection with the sale or promotion of Vidalia onions and products containing Vidalia onions." OCGA § 2-14-132.1.

Within the past few years, however, the Georgia Department of Agriculture ("the Department") "received a large number of complaints from consumers unhappy with the quality of Vidalia® onions on the store's shelves . . . Decreased consumer confidence could ultimately lead to reduced demand for Vidalia® onions and the potential for long-term adverse economic impacts on Geogia's Vidalia® onion industry." The Commissioner averred that

> The Vidalia® onion industry has faced a serious quality control problem caused in large part because Vidalia® onions are being harvested prematurely. Vidalia® onions are typically planted in the fall season and are rarely ready to be harvested before mid-April. The Vidalia® onion needs time in the soil to fully mature and develop the sweet flavor and other characteristics for which it is known. Some Vidalia® growers, in an attempt to beat their competitors to fill store shelves with sweet onions, have shipped onions under the Vidalia® trademark that were harvested too soon and of poor quality, with diminished shelf life. This practice has diminished consumer confidence in Vidalia® onions.

In order to address these concerns, on June 27, 2013, the Department sent a "Notice of Intent to Consider Amendments to certain rules pertaining to the Georgia Vidalia Onion Act" to all interested persons and parties. The notice invited written

comments that would be considered at a public hearing to be held on July 30, 2013. The Commissioner proposed to promulgate a regulation that would establish a "packing date" before which no onion could be packed as a Vidalia onion: "Packing precedes shipping, and by setting an appropriate April deadline before which no Vidalia® onion could be packed, much less shipped, the packing date would have the salutary effect of requiring growers to keep the onions in the soil for a longer period of time and provide more time for curing the onions."

Prior to the July 2013 hearing, the Commissioner received letters in support of the proposed regulation. One grower explained:

> Growers and shippers want to be first to market to extend their season and capitalize on this draw factor. As shippers, we are all pressured to ship early onions based on factors unrelated to the crop itself. Often times, a retailer's advertising calendar is set weeks in advance without any confirmation the crop will be mature and ready to ship. It is difficult to say "no" to a retailer and hope the business will return the following week. The establishment of a pack date using the proposed guidelines will not only reduce the quantity of immature onions on the market, but more importantly it will increase the probability the crop as a whole has matured to a marketable condition . . . .

> In early March of 2013, the crop appeared to be maturing early due to a warm December and January. Speculation began that Vidalia onions

4

would be ready to ship by early April. Then the weather turned cool and damp by mid-March. The crop stalled and did very little maturing over the last two weeks of March. As April arrived, the tops of the onions refused to fall, indicating that they were not ready for harvest. As the impending promised ship dates approached, we were faced without a good option except to proceed with prior shipping commitments. As a result, most Vidalia onions that were shipped in early to mid April were immature, soft, and discolored . . . Word in the market was, "What is wrong with the Vidalia's this year?" and "They look horrible." The poor quality and appearance of the onions caused retail sales to stall and eventually caused markets to fall . . . .

Texas has proven that they can produce a mild, good quality, granex type onion. When we in the Vidalia go to market early, our product does not have the curb appeal of the well-cured, quality granex onion from Texas. This encourages retail customers to stay with Texas until Vidalia is more mature . . . .

Labor is often scheduled to arrive in early April because the industry wants to be ready when the crop is ready. Often though, the labor is paid to stay out of the fields while we wait for the crop to mature. If the grower waits on the crop, the labor bill rises. If the grower takes the crop prematurely to reduce his labor exposure, the quality of the product shipped is compromised. I believe that as an industry, we could save money on labor by knowing when the season starts.

A second grower explained in a letter to the Commissioner that "[t]he poor quality of these early onions was one significant contributing factor to the poor demand for Vidalia onions this year." Another grower noted in his letter that a pack date may not be "*the* answer, but it is likely the *best* answer to our industry concerns." (Emphasis in original.) He explained:

> We've taken a May/June fresh market and forced it into an April/May market - akin to forcing a square peg into a round hole. By bowing to the demand of buyers who "won't get beat" regarding first to market, we've done ourselves and the consumer a disservice by placing an inferior product on the market in those first weeks of shipping . . . we saw untold receivers leave Vidalia® before we got started good, to return to Texas.

Representatives from several onion farms attended the July 2013 meeting, including representatives from Bland Farms. Counsel for Bland Farms expressed strong opposition to the proposed rule change on grounds that such a change "can only be done by the legislature" and would alter the current shipping date set forth in OCGA § 2-14-136. Several other onion growers testified that they were in favor of the proposed regulation because they felt it was needed to protect the Vidalia brand. One grower explained that immature onions are "jeopardizing our industry." Another testified that

6

our industry has suffered the last few years . . . as a result of onions being put on the market early that were immature, that were dug premature . . . And I think we have much better varieties. Our industry was founded on the traditional Vidalia varieties, not the early varieties -- the shape, the taste, the shelf life . . . Inspection service is great, and I think there's something to be said for our inspection service. But going about it of fixing our problem with only a more strict inspection service I don't think is going to work. Number one, the manpower. To inspect every load that gets shipped out of the industry, we don't have the manpower for that . . . Keep in mind that a lot of our onions that were shipped this year, that were shipped prior to the 15th, which is our set opening date, were inspected; they passed an inspection. And you can make these onions pass inspection, but once they get on the shelf, they don't have any shelf life.

A third grower testified:

I've been growing onions 50-plus years, and there's been more damage done to the Vidalia name recognition of the onion in the last few years by planting all these early-variety onions that are not what fall in the category of what I consider a true Vidalia onion. We built this name of the Vidalia onion on a good, true onion that is sweet, has good shelf life, and what's been hitting the market early in the past few years has not been the true Vidalia onions . . . Breeders are breeding onions that come off 30 days early. They might come off 30 days earlier but they're not the true Vidialia nature of the onion. They're not sweet, they're not mild, you have aftertaste, and they do not last . . . We're rushing the onions; we're growing them too fast, trying to get to market premature and

7

shipping them premature. We don't allow them to dry; we don't allow them to cure in the fields. It's just amazing how much has changed from where we first started . . .If something's not done, then we can just as well mark off the word Vidalia onions. If somebody wants to grow onions and sell onions and want to put that junk on the market, put it under their name, not under the Vidalia name; because I'm proud of the Vidalia name and I'd like - - for my children and future generations, I'd like to protect it.

A fourth grower was reluctant to agree that a packing date would solve the problem: "Shelf life is one of the biggest problems we have . . . [T]he problem that we have is we've got an inferior product, whether we mandate a date that we can ship it or whether we mandate a date when we can pack it, it really doesn't matter. If it's a crappy product, that's what it's going to be whenever it gets there." But he stated further that "if putting [a] packing date makes it that much better, I'm all for it."

Following the hearing, on August 7, 2013, the Commissioner sent a letter to "Vidalia Onion License Holders" with the new regulation attached, effective August 28, 2013, giving the Commissioner authorization "to determine and announce a packing date each year for the Vidalia Onion®," i. e., the "packing date rule." See Ga. Comp. R. & Regs. r. § 40-7-8-.17. The letter noted that the Department had "conducted several listening sessions in recent months to discuss potential solutions

8

to the quality issues faced by the Vidalia Onion industry." The Commissioner explained that while some growers voiced opposition to the packing date rule and asked the Department to urge the "Georgia Federal-State Inspection Service" to provide more rigorous inspection during the season, his department had "no authority to strengthen the regulations above U.S. #1." He explained further that he "evaluated the costs and required training associated with adding a projected 60 inspectors," but saw "no wisdom in passing this cost on to producers."

On September 23, 2013, Bland Farms filed a "Complaint for Declaratory Judgment and Injunctive Relief" asserting that the Commissioner promulgated a new regulation that conflicted with the Georgia Vidalia Onion Act. Specifically, Bland Farms asserted that the new regulation replaced "shipping date" with "packing date," thereby establishing a fixed date on which Vidalia onions may first be packed and shipped, in direct contravention of the Act.

The Commissioner filed an answer, as well as a motion to dismiss the complaint and a motion for summary judgment. Bland Farms moved for judgment on the pleadings. Following a hearing, the trial court denied the Commissioner's motion to dismiss, finding that Bland Farms had standing to seek a declaratory judgment. The court denied the Commissioner's motion for summary judgment and granted Bland

9

Farms' motion for judgment on the pleadings, finding that the Commissioner exceeded the scope of his authority in adopting a regulation that abolishes the term "ship date" in OCGA § 2-14-136. It is from this order that the Commissioner appeals.

On appeal from the grant of judgment on the pleadings, "we conduct a de novo review of the trial court's order to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law." (Citation, punctuation and footnote omitted.) *Hall v. Sencore, Inc.*, 302 Ga. App. 367 (691 SE2d 266) (2010). This court also conducts a de novo review from the trial court's denial of a motion for summary judgment. *Johnson v. Omondi*, 294 Ga. 74, 76 (751 SE2d 288) (2013). "A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." (Citation omitted.) Id. at 75.

1. We first address the Commissioner's assertion that Bland Farms lacks standing to bring an action for declaratory judgment, and that therefore, sovereign immunity has not been waived.

> The State's sovereign immunity has been specifically waived by the General Assembly pursuant to OCGA § 50-13-10, which is part of the Administrative Procedure Act. Therein, the State has specifically consented to be sued and has explicitly waived its sovereign immunity

10

as to declaratory judgment actions in which the rules of its agencies are challenged.

(Citations, punctuation and footnotes omitted.) *DeKalb County School District v. Gold*, 318 Ga. App. 633, 637 (1) (a) (734 SE2d 466) (2012). "Actions for declaratory judgment provided for in this Code section shall be in accordance with Chapter 4 of Title 9, relating to declaratory judgments." OCGA § 50-13-10 (c). Subsection (a) of OCGA § 9-4-2 provides:

> In cases of actual controversy, the respective superior courts of this state shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

And "[w]e must construe the declaratory judgment statute liberally. The statute is available in situations presenting an 'actual controversy' where interested parties are asserting adverse claims upon a state of facts wherein a legal judgment is sought that would control or direct future action." (Citations and punctuation omitted.) *In re Doe*, 262 Ga. 389, 390 (1) (418 SE2d 3) (1992). Moreover, "[i]n order to challenge a statute or an administrative action taken pursuant to a statute, the plaintiff must

11

normally show that it has interests or rights which *are or will be affected* by the statute or the action." (Citations and punctuation omitted; emphasis in original.) *Atlanta Taxicab Co. &c. v. City of Atlanta*, 281 Ga. 342, 345 (2) (638 SE2d 307) (2006).

The Commissioner argues that Bland Farms does not have standing because it is "not walking in the dark and risking 'undirected action' stemming from a state of uncertainty . . . [Bland Farms] understands the regulation, knows what it requires, and would simply like the option of non-compliance." The Commissioner cites *Dept. of Transp. v. Peach Hill Properties*, 280 Ga. 624 (631 SE2d 660) (2006), as controlling authority. But in that case, the plaintiff "elected to seek declaratory judgment rather than initiate a new application" for a landfill exemption. Id. at 626 (1). The Georgia Supreme Court held that the plaintiff must first file an exemption application, and be denied, in order to proceed with a declaratory judgment action, because the court cannot rule in the abstract. Id.

In this case, however, Bland Farms is not challenging the adoption of a rule that it is not affected by until it seeks an exemption under the rule, but is rather challenging the adoption of a rule it is automatically affected by. The position of the plaintiff in *Peach Hill Properties*, in contrast, is one step removed from the position

12

of Bland Farms. As a Vidalia onion grower, Bland Farms is an interested party claiming a right to ship onions pursuant to a statute - - a right it claims is impeded by a newly enacted regulation. If Bland Farms fails to comply with the new regulation, the Commissioner has statutory authority to impose civil and criminal penalties. See OCGA §§ 2-14-134 (d), 2-14-135 (a). Thus, Bland Farms has made a sufficient showing "that the facts are complete and that the interest is not merely academic, hypothetical, or colorable, but actual." *Bd. of Nat. Resources &c. v. Monroe County*, 252 Ga. App. 555, 557 (1) (556 SE2d 834) (2001). The trial court therefore did not err in concluding that Bland Farms had standing to bring the declaratory judgment action. See, e. g., *Atlanta Taxi Cab Co.*, supra, 281 Ga. at 345 (2) (party entitled to contest residency requirement to remove that as an impediment to the marketability of its certificates of operation to non-residents); compare *Monroe County*, supra at 557-558 (1) (no standing where party had a generalized economic interest contingent upon future events).

2. The Commissioner asserts that the new regulation was valid.[2] The crux of the dispute here is the application of the new regulation in conjunction with OCGA § 2-14-136. That Code Section provides:

> The Commissioner *may* determine and announce a *shipping date* each year for the Vidalia onion marketing season in this state upon the recommendation of the Vidalia Onion Advisory Panel. Vidalia onions *may be shipped prior to such date with a mandatory U.S. No. 1 grade certificate*. The Vidalia Onion Advisory Panel shall survey the conditions of the Vidalia onion crop and recommend a shipping date for the marketing season to the Commissioner.

(Emphasis supplied.) OCGA § 2-14-136. The regulation, Ga. Comp. R. & Regs. r. § "40-7-8-.17 Packing Date," provides:

> The Commissioner is authorized to determine and announce a *packing date* each year for the Vidalia Onion marketing season which shall commence no sooner than 12:01 AM on the Monday of the last full week of April, each year. Vidalia Onions shall not be packed or put into commerce, at any time prior to the announced packing date. Once the packing date is established, Vidalia Onions may be packed in containers and shipped from that day forward. The Commissioner may, depending on crop conditions and with the recommendation of the Vidalia Onion Advisory Panel, specify a packing date other than the Monday of the last

---

[2]We note that 11 onion growers filed an amicus curiae brief in this court in support of the Commissioner.

14

full week in April. Drying and other forms of onion preparation may take place prior to the packing date.

Authority: OCGA § 2-14-133.[3]

(Emphasis supplied.)

The Commissioner contends that he is authorized to prescribe rules and regulations governing packing pursuant to OCGA § 2-14-133, and that the pack date rule is reasonable. Subsection (a) of OCGA § 2-14-133 provides in part:

> *The Commissioner is authorized to prescribe rules or regulations which may include*, but not necessarily be limited to, quality standards, grades, *packing*, handling, labeling, and marketing practices for the marketing of onions in this state, including the requirements that all Vidalia onions be initially packed only in the Vidalia onion production area *and that no Vidalia onion may be shipped from the Vidalia onion production area in bulk except as may be authorized by rule*, and such other regulations as are necessary to administer properly this article. The Commissioner may also prescribe rules or regulations establishing a registration, inspection, and verification program for the production and marketing of Vidalia onions in this state and, after hearing and public comment,

---

[3]In addition to the new packing date rule, the Commissioner also amended Ga. Comp. R. & Regs. r. 40-7-8-.02 to remove the definition of "shipping date" and add the definition of "packing date." "'Packing date' means the first day on which Vidalia Onions may be packed and shipped into commerce." Ga. Comp. R. & Regs. r. 40-7-8-.02 (r).

15

further limiting the Vidalia onion production area as defined in paragraph (5) of Code Section 2-14-131.

(Emphasis supplied.) The Commissioner contends that the packing date rule does not abolish or contravene OCGA § 2-14-136. He argues that:

> If the Commissioner chooses not to announce a shipping date in a particular season, the proviso on shipping before the shipping date does not apply, and growers may ship their Vidalia onions when they choose, but must nevertheless comply with all other regulatory requirements, which would include the packing date rule. If, however, the Commissioner were to exercise his discretion *to* announce a shipping date, then, in that event, growers, could not ship before such date; however, under OCGA § 2-14-136, they *would* be allowed to ship onions graded U.S. No. 1 prior to that shipping date.

He asserts that "a potential window of time could exist between the packing date and the shipping date when growers" would be allowed to ship with a U.S. No. 1 grade. Bland Farms contends that the packing date rule is essentially a new shipping date rule, and that the Commissioner has no authority to promulgate a rule that establishes a new method of determining ship dates in contravention of OCGA § 2-14-136. It argues that what the statute permits has now been prohibited by rule.

16

"The test of the validity of an administrative rule is twofold: whether it is authorized by statute and whether it is reasonable. In applying this test, we have explained that the interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference." (Citation and punctuation omitted.) *Georgia Dept. of Community Health v. Dillard* 313 Ga. App. 782, 785 (1) (723 SE2d 23) (2012). So the first question to be resolved is whether the new regulation is authorized by statute. OCGA § 2-14-133 (a) provides in part that "[t]he Commissioner is authorized to prescribe rules or regulations which may include, but not necessarily be limited to, quality standards, grades, packing . . . ." This provision grants the Commissioner broad authority to regulate packing.

But even where a rule is authorized, it must not "exceed[ ] the scope of or [be] inconsistent with the authority of the statute upon which it is predicated." *Dillard*, supra. Bland Farms argues, and the trial court concluded, that the pack date rule "establish[es] a new method for determining ship dates for Vidalia onions in contravention of OCGA § 2-14-136," and therefore exceeds the scope of the authority granted by OCGA § 2-14-133. Bland Farms argues further that the new pack date rule "prevent[s] Vidalia onion growers from exercising either of the two statutory rights granted in OCGA § 2-14-136 – namely, to ship Vidalia onions (1) at growers'

17

discretion in absence of a shipping date, or (2) not before the shipping date without a U.S. No. 1 certification." But this argument is misguided.

OCGA § 2-14-136 does not grant growers a *statutory right* to ship, rather it gives the Commissioner authority and/or discretion to announce a shipping date each year. If the Commissioner does not announce a shipping date, the statute is silent as to when growers can ship, and as Bland Farms argues, the result is that growers can then ship at their discretion. If the Commissioner does announce a shipping date, however, the statute provides that growers can ship prior to the date announced with a U.S. No. 1 grade certificate. The statute is not written in terms of a *right* to ship generally, but only permission to ship in a certain circumstance, all dependent upon the exercise of the Commissioner's discretion. Indeed, the provisions of the Vidalia Onion Act are written to protect the Vidalia onion brand, OCGA § 2-14-132.1, regulate the Vidalia onion industry, OCGA § 2-14-133, and impose penalties for unlawfully using the Vidalia onion brand or for failing to comply with regulations issued by the Commissioner, OCGA §§ 2-14-134, 2-14-135. The Act does not afford growers statutory rights with regard to shipping or packing. Rather, the Act gives the Commissioner both the authority to determine and announce a shipping date *and* the authority to promulgate a rule or regulation for packing. While OCGA § 2-14-136

18

provides that onions *may* be shipped prior to the announced shipping date with a U.S. No.1 grade certificate, the freedom to do so can be further limited by the Commissioner's authority to regulate packing pursuant to OCGA § 2-14-133. For example, the Act provides that the Commissioner has the authority to prescribe a rule or regulation "that no Vidalia onion may be shipped from the Vidalia onion production area in bulk except as may be authorized by rule." OCGA § 2-14-133 (a). This holds true even if the Commissioner announces a shipping date and the onions carry a U.S. No. 1 grade certificate.

We conclude, therefore, that the packing date rule is within the Commissioner's authority pursuant to OCGA § 2-14-133 and is not inconsistent with OCGA § 2-14-136, as all authority to regulate packing and shipping rests with the Commissioner. See, e. g., *Georgia Oilmen's Assoc. v. Georgia Dept. of Revenue*, 261 Ga. App. 393, 395-396 (1) (a) (i) (582 SE2d 549) (2003) (Department of Revenue regulations authorized by statute and do not conflict with other statutory law). We also conclude that some evidence was presented to support a finding that the packing date rule is reasonable in light of the testimony and letters received by the Commissioner concerning the declining quality of the Vidalia onion and the threat to the industry. See *Albany Surgical, P.C. v Dept. of Community Health*, 257 Ga. App. 636, 640 (1)

(b) (572 SE2d 638) (2002) ("judicial review of the reasonableness of a regulation under the second prong analysis is limited, because the regulation must be upheld if the agency presents *any evidence* to support the regulation, although contrary evidence is admitted by the challenging party."[Cit.] (Emphasis supplied.)).

The trial court therefore erred in granting Bland Farms' motion for judgment on the pleadings, and in denying the Commissioner's motion for summary judgment.

*Judgment affirmed in part and reversed in part in Case No. A15A0042. Appeal dismissed as moot in Case No. A15A1610. Phipps, C. J. and Doyle, P. J., concur.*